[No. 46366. En Banc. May 1, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWIN FITZSIMMONS, *Petitioner*.

*William Johnston,* for petitioner.

*David S. McEachran, Prosecuting Attorney,* and *Philip A. Serka* and *Mark D. Bantz, Deputies,* for respondent.

HOROWITZ, J.—Defendant Edwin Fitzsimmons appeals his conviction for driving while under the influence of intoxicating liquor. RCW 46.61.502, .504, .515. The Court of Appeals, Division One, affirmed the judgment entered in the Superior Court for Whatcom County following trial de novo on appeal from a conviction in district court. *State v. Fitzsimmons,* 23 Wn. App. 1012 (1979).

This court granted defendant's petition for review to consider two questions:

(1) Was the defendant illegally denied access to appointed counsel while in custody immediately after he

was arrested and charged with the offense of driving while under the influence of intoxicating liquor? (2) If the defendant was illegally denied access to appointed counsel, what is the appropriate remedy for this violation of his rights?

We *reverse* Mr. Fitzsimmons' conviction for driving while under the influence of intoxicating liquor and remand the case to the trial court for dismissal of the charge against him for the reasons set forth below.

I

Mr. Fitzsimmons was stopped at 11 p.m. on September 27, 1977, by Officer Ken Knies of the Washington State Patrol. Mr. Fitzsimmons was driving his automobile south on a road south of Blaine, Washington. Officer Knies had twice observed the defendant's vehicle swerve across the center line approximately 1 foot, once in the face of three northbound cars, before he stopped Mr. Fitzsimmons.

After stopping the defendant, Officer Knies detected a moderate to strong odor of intoxicants on Mr. Fitzsimmons' breath and observed that his eyes were watery and bloodshot. There was no evidence of the quantity of liquor Mr. Fitzsimmons had consumed or how long before his arrest he had drunk liquor. After having the defendant perform several physical tests of sobriety at the scene, Officer Knies arrested Mr. Fitzsimmons, placed him in custody, and by citation charged him with driving while under the influence of intoxicating liquor. He then called a mobile DWI van, which arrived at approximately 11:30 p.m.

The defendant was taken into the van and read his *Miranda* rights, including his right to appointed counsel if he could not afford legal assistance. Mr. Fitzsimmons then requested an appointed attorney, stating that he felt that he "should have the right to legal advice right now." The defendant told the officer that he had no money. Officer Knies informed the defendant that an appointed attorney could not be provided for him at that time, telling Mr. Fitzsimmons "You're not going to get anything for free

tonight." Officer Knies said that, instead, "The Court can appoint [a lawyer] at the time of pre–trial or at arraignment date." He also told the defendant that because he was a Whatcom County resident, it was likely that he would be released on personal recognizance rather than taken to jail. The stipulated facts do not reveal when Mr. Fitzsimmons was released or whether and for how long he was jailed after his arrest and citation.

The defendant refused to take a Breathalyzer test after being told he could not have a court appointed attorney's advice at that time. He was convicted in district court of driving while under the influence of intoxicating liquor. The record does not reveal when he actually first appeared before a magistrate. The findings of fact prepared when Mr. Fitzsimmons was convicted reveal that the defendant was an indigent and eligible for appointed counsel at the time of his arrest. It does not appear when he was first appointed counsel, but Mr. Fitzsimmons was represented by an appointed attorney in Superior Court. On appeal to the Superior Court, Mr. Fitzsimmons, acting through his appointed attorney, moved to have the charges against him dismissed on the basis of *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966). The court denied the motion for dismissal but concluded that Mr. Fitzsimmons had illegally been denied access to counsel and therefore ruled that all evidence obtained after that violation of the defendant's rights would be suppressed. Because all of the State's evidence had been gathered before Mr. Fitzsimmons' request for counsel, no evidence was actually suppressed.

Mr. Fitzsimmons was subsequently convicted in Superior Court on the basis of stipulated facts. He was sentenced to 180 days in the Whatcom County jail, fined $312.50, and placed on probation for 1 year. The Court of Appeals affirmed the suppression order and the conviction. This court granted defendant's petition for review of the conviction.

## II
### DEFENDANT'S RIGHT OF ACCESS TO APPOINTED COUNSEL

The defendant contends that he was illegally denied access to appointed counsel when, upon informing the charging officer that he had no money but that he desired legal advice, he was told in substance there was no provision for access to appointed counsel who could advise him at that time, but that he would have to wait for assistance until he had appeared before a magistrate some time later. Both justice court rules and constitutional case law show that Mr. Fitzsimmons' contention that he was illegally denied access to appointed counsel is correct.

JCrR 2.11(c), which states that an individual must be immediately advised of his right to appointed counsel when taken into custody, requires that "[a]t the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer." Although Mr. Fitzsimmons requested legal advice, the provisions of JCrR 2.11(c) were not complied with. He was not provided access to a phone and with the telephone numbers of attorneys who serve as appointed counsel to indigents. *See also* JCrR 2.11(b)(1), which states that "[t]he right to counsel shall accrue as soon as feasible after the defendant is taken into custody, when he appears before a committing magistrate, or when he is formally charged, whichever occurs earliest." Here, Mr. Fitzsimmons' right to counsel attached both because he was arrested and placed in custody and because he was charged. His rights under these rules were violated when he was denied the information and means necessary to allow him to contact appointed counsel.

Under the unique circumstances of this case, compliance with the provisions of JCrR 2.11 was also constitutionally compelled. Mr. Fitzsimmons justifiably relies on *Tacoma v. Heater, supra,* in which this court ruled that it is constitutional error to prevent a defendant charged with driving

while under the influence of intoxicating liquor from having access to the means of obtaining legal advice.

■ A criminal defendant's Sixth Amendment right to counsel attaches when a critical stage in a criminal prosecution resulting in loss of liberty is reached. *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972); *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972); *Tacoma v. Heater, supra; State v. Jackson,* 66 Wn.2d 24, 400 P.2d 774 (1965).

In *Heater,* the defendant was prevented from calling his privately retained attorney by a Tacoma Police Department regulation that denied individuals charged with an offense involving intoxication the right to make a telephone call until 4 hours had passed since arrest. The court emphasized the unique nature of the charge of driving while under the influence in ruling that the police regulation interfered with the defendant's Sixth Amendment right to counsel at a "critical stage" in his case:

> At what time was a "critical stage" reached in the defendant's case? It was no later than the moment when, immediately after the police officers had conducted their tests for sobriety and had interrogated the defendant, they charged him with the offense.
>
> The denial of counsel at this point prevented the defendant's effective preparation for his defense to the charge against him. It was necessary for him to present evidence showing that he was not under the influence of intoxicating liquor at the time of his arrest. A most effective way to present such evidence would be through disinterested witnesses who could observe his condition soon after his arrest or after he had been booked for the crime, and by a blood test administered by a doctor. The evidence of intoxication dissipates with the passage of time. The 4–hour rule . . . recognizes that after 4 hours a person under the influence of intoxicating liquor will have reached a state of sobriety so that he is safe to be released . . .
>
> The defendant had virtually no other way to obtain the necessary proof of his innocence.
>
> . . .

It was essential to the effective preparation of his defense that the defendant be permitted to communicate with his attorney immediately after he was charged, in order to secure assistance of counsel in the pre–trial period as required by the constitutional standards.

*Tacoma v. Heater, supra* at 739–40.

*Heater* thus established the rule in this case that when the defendant is charged with driving while under the influence of intoxicating liquor, he must be allowed access to legal counsel immediately after arrest and charging.

As in *Heater*, the defendant here was charged with driving while under the influence of intoxicating liquor by the officer who issued a citation and was denied immediate access to legal counsel. The only potentially distinguishing characteristic is the fact that in this case Mr. Fitzsimmons asserted that he was indigent and requested access not to a retained attorney but to appointed counsel. There is no claim that defendant was not eligible as an indigent for appointed counsel. Indeed, he was later found to be indigent by the court in an unchallenged finding and thus eligible for appointed counsel. JCrR 2.11(c)(1), (d)(1).

The State argues that because the defendant is indigent, his right to counsel is limited by the availability of indigent attorney services. It notes that "Whatcom County provides indigent defendant attorney services [only] during working hours on weekdays for those persons referred by the Court."

However, the right to access to counsel established in *Heater* is of a constitutional proportion and cannot be affected by the exigencies of such law office hours. Principal authority for the decision in *Heater* was the United States Supreme Court's opinion in *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963), which established the indigent's Sixth Amendment right to counsel at the expense of the state. That right was expressly extended to misdemeanor crimes resulting in imprisonment, such as the instant case, in *Argersinger v.*

*Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972).

The defendant's constitutional rights cannot and do not depend on the status of his bank account. Thus, *Heater* requires the State to provide the indigent charged with driving while under the influence of intoxicating liquor with access to appointed counsel in the same instances in which the solvent accused must be allowed to contact his privately retained attorney. The constitutional right to counsel in this case does not depend on whether the attorney is appointed or retained.

The Sixth Amendment right to counsel has been further defined by the United States Supreme Court since this court's decision in *Heater.* A brief analysis of the facts in this case in light of the three criteria which are generally thought to require access to counsel will confirm the violation of Mr. Fitzsimmons' constitutional rights.

First, in *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972), the United States Supreme Court stated that the Sixth Amendment right to counsel arises at the "initiation of judicial criminal proceedings":

> It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural law.

*Kirby v. Illinois, supra* at 689. When Officer Knies cited the defendant for driving while under the influence of intoxicating liquor, criminal proceedings were "initiated." RCW 46.64.010, .015; *Mercer Island v. Crouch,* 12 Wn. App. 472, 475, 530 P.2d 344 (1975). Issuance of a citation charging Mr. Fitzsimmons with the crime of driving while under the influence of intoxicating liquor required him to answer that charge in a judicial court and confronted him with the "prosecutorial forces of organized society." The criteria of *Kirby* had thus been met.

Second, as discussed in *Heater,* the right to counsel attaches only to a "critical stage" in the criminal prosecution. Such a situation arises when the defendant's right to a fair trial or other substantial rights may be affected. *Coleman v.*

*Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970). *Mempa v. Rhay,* 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967); *Pettit v. Rhay,* 62 Wn.2d 515, 383 P.2d 889 (1963). As set out in the excerpt from *Heater* above, the period immediately after arrest and charging in a driving while under the influence of intoxicating liquor case is a "critical stage" because of the unique character of the evidence to be obtained and the trial strategy decisions which must be made then, if at all. The analysis of *Heater* still persuades us that in the prosecution of this particular type of charge, the period immediately following charging is a critical stage.

Third, in *United States v. Ash,* 413 U.S. 300, 37 L. Ed. 2d 619, 93 S. Ct. 2568 (1973), the Supreme Court stated that the Sixth Amendment right to counsel extended only to events during which "the accused required aid in coping with legal problems or assistance in meeting his adversary", *United States v. Ash, supra* at 313, where "the accused was confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." *United States v. Ash, supra* at 310. The time immediately after arrest and charging for driving while under the influence, when the defendant is still in custody and must immediately make the decision whether to submit to the Breathalyzer, arrange for further testing and observation of his mental state or forever lose any defense, is certainly such an event. Only by acknowledging the defendant's right of access to counsel can we insure he is meaningfully assisted in his defense.

In reaffirming the rule of *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966), we clearly note the necessary limits to our holding imposed by the factual situations in that case and in the instant case. We reiterate the importance of intoxication as an element of the offense in requiring a rule that allows the defendant immediate access to an attorney. Without this factor, the period immediately following arrest and charging for a traffic offense would not be a "critical stage" of the criminal prosecution in which the defendant's Sixth Amendment right attaches.

Although stringent enforcement of the criminal laws cannot override the defendant's constitutional rights, we also wish to voice our confidence that reaffirmation of the defendant's rights to assistance of counsel will not handicap enforcement of the drunk driving statutes. For example, the State is already required to inform the defendant that he need not take the Breathalyzer test and of the consequences of refusal. RCW 46.20.308. Access to counsel will merely allow the defendant to receive legal advice if he chooses before responding to the warning.

In addition, we note that *Heater*'s application to a defendant who asserts that he is indigent will place no additional burden on the arresting and charging officer, who must simply provide any defendant with access to a telephone and the number of a public defender organization *or numbers of individuals willing to act as counsel in this type of case.*[1] Mr. Fitzsimmons' attorney expressed his willingness to act as counsel and indicated to this court in oral argument that he would have traveled to the scene of Mr. Fitzsimmons' arrest and charging had he been contacted. We are confident many other attorneys in this state will also bear their ethical duty to provide legal assistance under these circumstances. *See especially* (CPR) EC 1-1 ("A basic tenet of the professional responsibility of lawyers is that every person in our society should have ready access to the independent professional services of a lawyer of integrity and competence."); (CPR) EC 2-25 ("The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer . . ."); (CPR) EC 2-26 ("[I]n furtherance of the objective of the

---

[1] As noted by the defense attorney's affidavit, as a practical matter the requirements of *Heater* appear to be already met in some counties in the state. In at least three counties—King, Snohomish, and Clark—24-hour access to appointed counsel by telephone is provided. Affidavits of William Johnston (December 8, 1977). In the state's less populated counties a list of attorneys who have expressed a willingness to serve as appointed counsel for indigents could easily be supplied to the defendant by the arresting and charging officer if the defendant requests legal assistance.

bar to make legal services fully available, a lawyer should not lightly decline proffered employment. The fulfillment of this objective requires acceptance by a lawyer of his share of tendered employment which may be unattractive both to him and the bar generally.").

Nothing prevents the officer from carrying and providing the defendant with a list of organizations or attorneys willing to be called after regular hours to assist individuals arrested and charged with driving while under the influence, and the analysis undertaken above demonstrates that such a step is consistent with the constitution and court rules. The police officer need not, and of course cannot, appoint counsel for the defendant. That is the judge's obligation. JCrR 2.11(c)(2) does not require or permit the officer to ascertain if the defendant is indeed indigent before providing him with the means and information necessary to contact assigned counsel. The defendant's actual indigent status can be briefly ascertained during his initial contact with an attorney and can be verified, as it was in this case, at his initial appearance before a magistrate. *See* JCrR 2.03.

The nature of the defendant's right of access to counsel does not unduly burden the State. The circumstances under which arrest and charging for the instant offense often occur—at late hours on remote highways—make it likely that in some cases attorneys may choose to advise charged defendants over the telephone. The State is not required to insure under the preliminary circumstances of this and similar cases that the defendant is placed in face–to–face contact with counsel. Although a criminal defendant's Sixth Amendment right to counsel in most other circumstances will require the State to insure that the defendant is advised by an attorney in person, that is not the case here. The unique nature of the offense of driving while under the influence and the circumstances under which the defendant is likely to be arrested and charged both create the constitutional right and limit the type of effort the State must make to avoid violating that right. *Cf.*

*Wolff v. McDonnell,* 418 U.S. 539, 560–63, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974) (extent of procedural protection constitutionally required varies with the nature of the individual's interest and the factual context in which the interest is asserted). Often telephone consultation alone at the stage in the proceedings considered here *will* provide the defendant with adequate legal assistance to assure his basic rights to fair trial. The State must merely insure that the defendant can immediately contact counsel who can help him make the decision as to how his defense will be structured, and whether that defense requires the attorney's physical presence at the scene of the charging. This was the right denied Mr. Fitzsimmons in this case under the constitutional rule of *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966).

Although the State does not argue that the implied consent law can have any adverse effect on a defendant's established right of access to counsel, it has been suggested that this statute, implying a driver's "consent" to tests designed to determine the alcoholic content of his blood, somehow alters the character of the confrontation between the State and the accused and thus abrogates the defendant's right of access to counsel at what would otherwise be a critical stage in the proceeding against him. However, as next appears, the implied consent statute does not affect the defendant's rights but instead forcefully demonstrates the need to allow the defendant access to counsel, if desired, to assist in making the decision whether to submit to chemical sobriety tests.

RCW 46.20.308, although called an "implied consent" statute, clearly gives the driver arrested for driving while under the influence the right to submit to *or refuse* chemical sobriety tests requested by the arresting officer. Although the first sentence states that a driver "shall be deemed to have given consent . . . to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood," the statute goes on to state that the arresting officer "shall inform the person of

his right to refuse the test. . . ." RCW 46.20.308 goes on to state that "no test shall be given" if "the person arrested refuses . . . to submit to a chemical test of his breath . . ." The penalty for exercising the right to refuse is 6 months' revocation of the defendant's driver's license, but it is clear that the defendant has an option and that it is not illegal or statutorily unjustifiable to refuse to consent to proposed State–administered testing. *See Gooch v. Spradling,* 523 S.W.2d 861 (Mo. Ct. App. 1975); *Brady v. Tofany,* 36 App. Div. 2d 987, 320 N.Y.S.2d 880 (1971); *Blow v. Comm'r of Motor Vehicles,* 83 S.D. 628, 164 N.W.2d 351 (1969).

Although the State may be able to force the defendant to undergo chemical sobriety tests, *see Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966), that is a question we need not decide here because the State clearly has not provided for mandatory testing in RCW 46.20.308. Instead, the State has acknowledged the critical nature of the requested chemical sobriety testing and has required the defendant to make a decision regarding testing that could often be better made with the advice of an attorney.

Nothing in RCW 46.20.308 precludes the application of general court rules such as JCrR 2.11, which insures the defendant the right to contact counsel "at the earliest opportunity," to defendants charged with driving while under the influence. Uniformly, other states which have considered the applicability of rules and statutes affording a general right to counsel to DWI defendants have concluded that implied consent laws have no effect on the rights established in those provisions. *See Gooch v. Spradling, supra* (Missouri); *McNulty v. Curry,* 42 Ohio St. 2d 341, 328 N.E.2d 798 (1975); *Prideaux v. Department of Pub. Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976). The provisions of JCrR 2.11 are not affected by the implied consent aspects of RCW 46.20.308.

It is also clear RCW 46.20.308 cannot act to "waive" the defendant's constitutional right of access to counsel in a criminal proceeding such as that appealed from here. The

waiver of constitutional rights necessary to a fair trial, such as *the Sixth Amendment right to counsel, must be* "knowing and intelligent" and cannot be implied merely because the defendant chooses to drive on the roads of this state. *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938); *see Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973).

It is true that in some other states that have considered the question, the decision to undergo chemical sobriety tests requested by the arresting officer has not been considered a critical stage at which the defendant must be afforded access to counsel. However, these cases have examined the defendant's rights in the context of a subsequent administrative proceeding, similar to that provided in this state, reviewing revocation of the defendant's license for refusing to submit to testing.[2] In many cases the holdings have been explicitly and carefully limited to a decision that the Sixth Amendment right to counsel does not apply in administrative proceedings such as these revocation hearings. *See Blow v. Comm'r of Motor Vehicles, supra; Gottschalk v. Sueppel,* 258 Iowa 1173, 140 N.W.2d 866 (1966); *Mills v. Bridges,* 93 Idaho 679, 471 P.2d 66 (1970); *State v. Severino,* 56 Haw. 378, 537 P.2d 1187 (1975). In a criminal case such as that considered here, the constitutional analysis undertaken above of the circumstances in which the Sixth Amendment right attaches convinces us that a critical stage in the criminal proceeding against Mr. Fitzsimmons was indeed reached and that his rights were violated by the arresting officer's refusal to allow him access to appointed counsel after his arrest for driving while under the influence. *See Prideaux v. Department of Public Safety, supra; Hall v. Secretary of State,* 60 Mich. App. 431, 231 N.W.2d 396 (1975); *People v. Gursey,* 22 N.Y.2d

---

[2]This case considers the right to counsel in a criminal prosecution. We need not, and do not, reach the question whether the right to counsel would apply in an administrative proceeding under RCW 46.20.329 to determine whether revocation of the defendant's driver's license for refusal to take a chemical sobriety test is justified.

224, 239 N.E.2d 351, 292 N.Y.S.2d 416 (1968). We therefore hold that Mr. Fitzsimmons was illegally denied access to counsel.

## III
### REMEDY FOR DENIAL OF DEFENDANT'S RIGHT OF ACCESS TO APPOINTED COUNSEL

 Having determined that Mr. Fitzsimmons was illegally denied access to counsel under the rule of *Tacoma v. Heater, supra,* we must consider the appropriate response to this denial of his rights. We again adhere to the rule in *Heater* requiring dismissal of the driving while under the influence charge against Mr. Fitzsimmons.

In *Heater* this court stated that "the denial to the defendant of the assistance of his attorney after the officers had conducted their tests and questioning, violated his constitutional right to have counsel and due process, and any conviction obtained thereafter was void." *Tacoma v. Heater, supra* at 741 (footnote omitted). Mr. Heater's conviction was therefore reversed and the action dismissed.

The dissent in *Heater* correctly characterized the majority's approach as one "which *conclusively* attributes or presumes prejudice to the defendant . . ." *Tacoma v. Heater, supra* at 751 (Finley, J., dissenting). We continue to believe that "it must *inevitably* follow that Mr. [Fitzsimmons] suffered irreparable prejudice", *Tacoma v. Heater, supra* at 745, because of the unique circumstances of a driving while under the influence case in which denial of access to counsel may prevent development of a defense because the evidence of intoxication disappears within a relatively short time.

The Court of Appeals affirmed the trial court's disposition of the denial of counsel on the grounds that evidence obtained after the denial could be suppressed. Since all the evidence supporting guilt was developed before denial of counsel, the Court of Appeals said the conviction could stand. This fact alone reveals that the "remedy" has no real ameliorative effect on the violation of the defendant's right.

The action taken is also not supported by precedent. Cited in support of the suppression remedy by the Court of Appeals was this court's decision in *State v. Ivey,* 73 Wn.2d 589, 439 P.2d 974 (1968). In *Ivey,* the defendant was convicted for possession of two marijuana cigarettes after being arrested for being drunk in a public place. The search in which the cigarettes were found was pursuant to a lawful arrest and was constitutional. As this court correctly noted in *Ivey, Heater* was distinguishable and had no application. Ivey was not convicted of an offense involving intoxication and the presence of an attorney immediately after being taken into custody could have had no effect on her defense for possession of marijuana found during a lawful search.

In this case, however, the denial of access to counsel had the same effect it did in *Heater*—it prevented assistance of counsel at trial in development of a defense because evidence of intoxication is quickly dissipated. This court recognized that in *State v. Ivey, supra* at 590, in which *Heater's* denial of counsel was called "clearly prejudicial." The Court of Appeals reliance on *State v. Ivey, supra,* and on *State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967), which also did not involve an intoxication offense, was unjustified.

The State also argues that Mr. Fitzsimmons' conviction should be upheld because the unconstitutional denial of his right to counsel was "harmless error" and did not prejudice his defense.

■ The harmless error doctrine allows a conviction to stand, even if it follows a denial of the defendant's constitutional rights, if the State can prove beyond a reasonable doubt that the unconstitutional act did not prejudice the defendant, and that he would have been convicted even if the error had not taken place. *Coleman v. Alabama,* 399 U.S. 1, 11, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970); *Chapman v. California,* 386 U.S. 18, 23, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). That burden was not met by the State in this case.

The only evidence available against Mr. Fitzsimmons in this case was the testimony of the single officer who observed his behavior while driving and while performing sobriety tests. An attorney could have arranged for retrieval of additional evidence in those few hours during which any proof of the defendant's mental state could still be established. This prevents the State from showing beyond a reasonable doubt that the error was harmless.

The State suggested in oral argument that the defendant was not harmed because he had not taken the Breathalyzer test and, indeed, no evidence harmful to his case had been gathered after denial of his right of access to counsel. But in *Heater* the defendant had not undergone chemical sobriety tests proposed by the State either. *Tacoma v. Heater,* 67 Wn.2d 733, 734, 409 P.2d 867 (1966). Mr. Fitzsimmons' attorney, had he been allowed to contact one, could have advised him to take the State's proposed Breathalyzer test or arranged for an independent Breathalyzer test. RCW 46.61.506(5). Unbiased observations, blood tests, and supervised Breathalyzer readings could have proved that the defendant was not intoxicated at the time of his arrest and charging. *See Tacoma v. Heater, supra* at 739. Thus, even were we to adopt the harmless error test in this type of case the State could not have met its burden.

The conviction should be reversed and the case remanded to the trial court with directions to dismiss the charge under the rule in *Tacoma v. Heater, supra.*

It is so ordered.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied June 23, 1980.