[No. 8204–3–I.   Division One.   April 27, 1981.]

THE CITY OF SEATTLE, *Respondent,* v. NORMAN JAMES BOX, *Appellant.*

*Hayne & Moote* and *Stephen W. Hayne,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Darcy Goodman, Assistant,* for respondent.

SWANSON, J.—Norman J. Box was convicted by a jury of driving while under the influence of intoxicating liquor. He appeals and contends the City of Seattle effectively denied to him his constitutional right of access to counsel.

The facts pertinent to a discussion of the issues are as follows: At about 2 a.m. on May 10, 1979, Box was stopped by Officer Jacobson of the Seattle Police Department for suspected driving while intoxicated. After noting his appearance and ability to perform certain field sobriety tests, Officer Jacobson arrested Box and advised him of his *Miranda* rights. Jacobson then transported Box to the Wallingford station in north Seattle for videotaping and a Breathalyzer test.

Shortly after the videotaping began, and after Box had again been advised of his *Miranda* rights, he indicated a desire to consult his attorney. He was then allowed access to a telephone, and he called his attorney, Michael Frost, at about 2:40 a.m.

Attorney Frost advised Box that, "Generally a person

should take a Breathalyzer test." But Frost wanted to talk to the arresting officer to learn the details surrounding the arrest. Despite two or three requests by Box, Officer Jacobson refused to talk to Frost. Thinking it unusual that Jacobson would not talk to him, Frost decided to go down to the Wallingford station. He told Box to tell Officer Jacobson it would take him about 20 minutes to get there and advised Box not to take any further tests until he arrived.

Box was then asked to complete the videotaping and to take the Breathalyzer test. Box stated that he wanted to wait until his attorney arrived. Officer Jacobson then decided to take Box to King County Jail and book him. Attorney Frost arrived at the Wallingford station at about 3:04 a.m. An officer at the reception desk told Frost that Jacobson was not there and that Box had taken a cab to 115th and Greenwood. Frost, believing Box had been released, returned home. However, at about 4:30 a.m., Frost received another call from Box and learned he was being held at the King County Jail.

On appeal, both Box and the City phrase the issue as being whether the police are required to wait a reasonable time for the defendant's attorney to arrive after the attorney has decided his presence is required. However, we see the issue as being whether the police conduct in this case so unreasonably interfered with Box's right of access to counsel as to effectively deny him that right. We hold that it did.

The right to counsel in the context of a prosecution for drunk driving was first addressed by our Supreme Court in *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966). In that case, the defendant, following a minor traffic accident, was arrested and taken to jail because the investigating officer believed him to be under the influence of intoxicants. After arriving at jail, the defendant asked permission to call his attorney. He was denied the right to do so, despite repeated requests, on the basis of a Tacoma Police Department policy which permitted officers to deny a per-

son charged with an offense involving intoxication the right to make a telephone call until 4 hours after the time of the arrest. The defendant was eventually allowed to call his attorney at 4 a.m. on the morning following his arrest.

The Supreme Court concluded that the policy operated to deny the defendant his right to counsel resulting in irreparable prejudice to his defense. The court's holding was based on the fact that the time when the defendant was charged—immediately after he had been interrogated and sobriety tests conducted—was a "critical stage" in the prosecution. The court concluded:

> Under the "critical stage" rule, the denial to the defendant of the assistance of his attorney after the officers had conducted their tests and questioning, violated his constitutional right to have counsel and due process, and any conviction obtained thereafter was void.

(Footnote omitted.) *Tacoma v. Heater, supra* at 741.

In later holding that the right of access to counsel enunciated in *Heater* applies with equal force to indigent defendants, the Supreme Court in *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893 (1980), recently reaffirmed that in a prosecution for drunk driving the time immediately following arrest and charging is a critical stage in the proceeding. Although the court found a basis for its decision in JCrR 2.11,[1] as well as the "critical stage/right to counsel"

[1]JCrR 2.11 states in part:

"(b) State of Proceedings.

"(1) The right to counsel shall accrue as soon as feasible after the defendant is taken into custody, when he appears before a committing magistrate, or when he is formally charged, whichever occurs earliest.
". . .

"(c) Explaining the Availability of a Lawyer.

"(1) When a person is taken into custody he shall immediately be advised of his right to counsel. Such advice shall be made in words easily understood, and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge.

"(2) At the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer."

analysis of *Heater,* most of the opinion discusses the problem in constitutional terms. The court reiterated that it is the unique nature of intoxication as an element of the charge that makes the advice of counsel immediately after arrest and charging so important.[2]

However, the court in *Fitzsimmons* recognized that the factual circumstances of drunk driving cases impose limits on the right of access to counsel:

> The nature of the defendant's right to access to counsel does not unduly burden the State. The circumstances under which arrest and charging for the instant offense often occurs—at late hours on remote highways—make it likely that in some cases attorneys may choose to advise charged defendants over the telephone. The State is not required to insure under the preliminary circumstances of this and similar cases that the defendant is placed in face–to–face contact with counsel. Although a criminal defendant's Sixth Amendment right to counsel in most other circumstances will require the State to insure that the defendant is advised by an attorney in person, that is not the case here. The unique nature of the offense of driving while under the influence and the circumstances under which the defendant is likely to be arrested and charged both create the constitutional right and limit the type of effort the State must make to avoid violating that right. . . . Often telephone consultation alone at the stage in the proceedings considered here *will* provide the defendant with adequate legal assistance to assure his basic rights to a fair trial. The State must merely insure that the defendant can immediately contact counsel who can help him make the decision as to how his defense will be structured, *and whether that defense requires the attorney's physical presence at the scene of the charging.*

(Citation omitted. Some italics ours.) *State v. Fitzsimmons,*

---

[2]The Supreme Court of the United States subsequently vacated the decision in *Fitzsimmons* and remanded the case for consideration as to whether the opinion was based on state or federal constitutional grounds, or both. Our court noted that JCrR 2.11 supplied the primary independent basis for the decision. However, the court concluded that its decision was also based on both state and federal constitutional principles and affirmed the original opinion without alteration or amendment. *State v. Fitzsimmons,* 94 Wn.2d 858, 620 P.2d 999 (1980).

*supra* at 447–48.

The above passage recognizes that there may be situations in which counsel concludes his physical presence is necessary. Although it is doubtful that in those situations the State is under a duty to insure face–to–face contact, it is clear that the police may not without reasonable justification *prevent* an attorney from making personal contact with his client. As the New York Court of Appeals has observed:

> In light of current recognition of the importance of counsel in criminal proceedings affecting significant legal rights, law enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand.

*People v. Gursey,* 22 N.Y.2d 224, 227, 239 N.E.2d 351, 352, 292 N.Y.S.2d 416 (1968).

In this case, Officer Jacobson testified that he did not leave a message for Box's attorney because:

> A . . . There would be nobody to leave a message with.
> Q Nobody at the Wallingford Precinct to leave a message for Mr. Frost; is that your testimony?
> A *I didn't know,* for one, *he was on his way down,* and if I told somebody he—they might have been out the door also and wouldn't get the message. *I had no reason to believe he was coming down.*

However, Jacobson admitted that Box had told him "it would take 20 minutes to get there." We find it difficult to believe that Jacobson would understand such a statement to be merely hypothetical.

But aside from whether or not Officer Jacobson actually knew Box's attorney was on his way to the Wallingford station, the unique feature of this case is that when the attorney did arrive he was told by an officer at the reception desk that "Jacobson was not there," and that "Mr. Box had taken a cab out to 115th and Greenwood." The consequence of this erroneous information was that Frost reasonably assumed his client had been released. He therefore

made no further effort to locate his client. Thus, Box was denied face–to–face conference with his attorney at that critical stage of the case when counsel could have most effectively assisted him in the preparation of his defense. As the court in *Tacoma v. Heater, supra,* stated at page 739:

> The denial of counsel at this point prevented the defendant's effective preparation for his defense to the charge against him. It was necessary for him to present evidence showing that he was not under the influence of intoxicating liquor at the time of his arrest. A most effective way to present such evidence would be through disinterested witnesses who could observe his condition soon after his arrest or after he had been booked for the crime, and by a blood test administered by a doctor.

To support its contention that Box was not denied counsel, the City places reliance on our recent opinion in *Wolf v. Department of Motor Vehicles,* 27 Wn. App. 214, 616 P.2d 688 (1980). In *Wolf,* as in the instant case, the defendant was arrested by Officer Jacobson and taken to Wallingford for a Breathalyzer. He was permitted to call his attorney and was advised to take the test. However, his attorney wanted to be present for the test, and he told an officer that he could be there in 15 to 18 minutes. The officers, however, attempted to administer the test without the attorney's presence, and by the time the attorney arrived, Wolf had been transported to the King County Jail.

We concluded that the right of access to counsel as mandated by *Fitzsimmons* had been complied with because the defendant had been permitted to telephone his attorney and had, in fact, received advice over the phone relating to taking the Breathalyzer. However, what we said regarding the right to counsel was unnecessary to the decision because *Wolf* was not a criminal case but was an administrative license revocation pursuant to RCW 46.20.308. We specifically held that *Fitzsimmons* had no application in that essentially civil proceeding.

Moreover, we do not view this opinion as being inconsistent with *Wolf.* Police should not be required to

wait for an attorney to arrive at the scene based on what may prove to be an insincere or misguided "promise" to be there in a matter of minutes. Rather, the officers should be permitted to continue with routine processing after permitting the defendant to call his attorney or the appropriate public defender agency. *Cf. Department of Public Safety v. Kneisl,* 312 Minn. 281, 251 N.W.2d 645 (1977). Thus, we do not necessarily condemn Officer Jacobson's decision to transport Box to the King County Jail for booking before Box's attorney arrived.[3] But even though "routine processing" may on occasion involve booking a drunk driving suspect into jail, we see no reason why some provision cannot be made for correctly informing an attorney who has chosen to come to the scene of charging that his client has been transported elsewhere. Certainly, routine processing does not include the giving of false information to an attorney regarding his client's whereabouts.

A criminal defendant's constitutionally mandated right of access to counsel after arrest and charging for a traffic offense where intoxication is an element must allow for the reasonable exercise of that right if it is to have meaning. To give a defendant access to counsel by telephone, but then, without justification, to deny or frustrate his exercise of that right in seeking a face–to–face contact with his attorney, robs the "right" of substance.

Here, the City police gave incorrect information to attorney Frost as to the whereabouts of his client. Whether the police action was a deliberate scheme to prevent the defendant from conferring with his attorney, or whether it was administrative indifference or merely an innocent mis-

---

[3]However, even with regard to Jacobson's decision to book Box into jail, the record in this case is unusual. Jacobson denied that he booked Box as "punishment" for his insistence on waiting for his attorney before taking further tests. Jacobson admitted, however, that "[M]y normal procedure would be to release unless I felt somebody was going back to their car and drive it off." Despite contrary assertions in the City's brief, nothing in the record suggests that Jacobson felt Box intended to return to his car. Jacobson specifically testified that he did not know if he felt Box was going back to his car.

take, the result is the same. Box's right, not only of access to counsel, but to a meaningful exercise of that right, was frustrated and ultimately prevented by police misdirection. Because Box was illegally denied the reasonable exercise of his right of access to counsel, the charge of driving while under the influence should have been dismissed. *State v. Fitzsimmons, supra.*

The conviction is reversed, and the case remanded with directions to dismiss the charge.

CALLOW and CORBETT, JJ., concur.