[No. 4121–2–III.   Division Three.   June 17, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
P. WURM, *Appellant.*

*Bruce Charawell* and *Aitken, Schauble, Patrick & Neill,*
for appellant.

*Ronald R. Carpenter, Prosecuting Attorney,* and *April
McComb, Deputy,* for respondent.

GREEN, J.—Michael P. Wurm appeals his conviction for
driving while under the influence of intoxicating liquor.
RCW 46.61.502. We affirm.

The only issue presented and not resolved by the recent decision, *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982), is whether defendant was denied his right to counsel when, although he received *Miranda* warnings, he was not specifically advised he had the right to consult with an attorney before taking the Breathalyzer test.

The stipulated facts are: About 1 a.m. on March 16, 1980, a Washington State Patrol trooper observed defendant's vehicle weaving over the center and fog lines on a road 4 miles east of Pullman. When the trooper stopped the vehicle, he noted defendant was in a sleepy–drowsy state and emanated a strong odor of intoxicants. Defendant's performance of three standard physical sobriety tests led the trooper to believe he was obviously affected by intoxicants. Consequently, the trooper informed defendant he was under arrest and transported him to the Pullman police station.

At the station, defendant signed a form acknowledging he had received, and of his own volition waived, his *Miranda* rights. The form in part stated:

3. I have the right at this time to an attorney of my own choosing and have him present for and during questioning and the making of any statements;

4. If I cannot afford an attorney, I am entitled to have one appointed for me by a court without cost to me and have him present for and during questioning and the making of any statements.

Defendant told the trooper he spent the evening with friends at a billiard hall and had six glasses of beer between 6 or 7 p.m. and 12:30 a.m. He further stated he was "a little bit" affected by what he had to drink. He was then asked to submit to a Breathalyzer test and signed a form which stated in part:

I am now being asked to submit to a chemical test of my breath to determine the alcoholic content of my blood. I am now advised I have the right to refuse this breath test, that if I refuse, my privilege to drive will be revoked or denied by the Department of Motor Vehicles; and that I have the right to additional tests administered by a

qualified person of my own choosing, after either submitting to or refusing the breath test.

The test showed a 0.12 percent blood alcohol level.

Defendant was charged in district court with driving while intoxicated. Since he was indigent, counsel was appointed to represent him. He was found guilty. On appeal to the superior court, he moved to either dismiss the charge or suppress evidence of the Breathalyzer reading on the ground he had not been properly advised of his right to counsel. He appeals the denial of this motion.

Defendant contends he was denied his right to counsel because he was not advised that right related specifically to the Breathalyzer test. In support of this position he relies upon *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893 (1980). He further relies upon *Sims v. State,* 413 N.E.2d 556 (Ind. 1980), arguing a waiver of that particular right could not be implied from the fact that he signed a general waiver form. We do not find those cases to be controlling here.

■■ It is true *Miranda* established that an accused must be informed of his constitutional rights before those rights can be deemed waived. The Court further held an attorney's presence is important to protect an accused's Fifth Amendment right against self–incrimination; therefore, the accused must be advised of his right to counsel prior to custodial interrogation. Here, however, no Fifth Amendment right is at issue. That right protects against compelling testimonial or communicative evidence, *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966), and a Breathalyzer elicits real or physical evidence. *State v. Franco, supra* at 825–28. Hence, *Miranda* does not require that an accused be advised of his right to counsel prior to taking a Breathalyzer test.

Moreover, although *State v. Fitzsimmons, supra,* held a person arrested for driving while intoxicated has a Sixth Amendment right to counsel, that case does not require including specific reference to the Breathalyzer test in the

*Miranda* warnings. First, *Fitzsimmons* held the Sixth Amendment was violated where an accused was *denied* access to counsel *on request.* It did not address the nature of the warning which must be given. Second, the court did not hold the right to counsel was triggered by the request to take a Breathalyzer test. Rather, the court stated the right attaches to the *stage* in the proceedings immediately after arrest and charging because potential defenses to the crime charged disappear as the evidence dissipates. The decision of whether to take the Breathalyzer was merely listed as one of the *reasons* counsel may be important at that stage. The court, at page 442, went on to discuss other reasons counsel may be desirable, quoting *Tacoma v. Heater,* 67 Wn.2d 733, 739, 409 P.2d 867 (1966):

> A most effective way to present . . . evidence [that the defendant was not under the influence of intoxicating liquor] would be through disinterested witnesses who could observe his condition soon after his arrest or after he had been booked for the crime, and by a blood test administered by a doctor.

The court further pointed out trial strategy decisions are made, and the accused may need assistance with legal problems in meeting his adversary, at that stage. The effect of defendant's position would be to require police officers to explain each of the reasons for being entitled to an attorney. *Fitzsimmons* did not go that far, and we decline to do so here.

It would be both impractical and unreasonable to impose the requirement upon officers that they enumerate to a defendant every conceivable reason counsel might be desirable when the defendant is arrested and charged. Nor should the officer be required to place a legal interpretation on which of his actions constitutes the stage in which preparation of defendant's case is critical, thereby requiring that the warning be renewed. *See Harris v. Riddle,* 551 F.2d 936 (4th Cir. 1977); *United States v. Frazier,* 476 F.2d 891 (D.C. Cir. 1973). Their duty is discharged once defendant is informed of the *Miranda* warnings and, under *State v.*

*Fitzsimmons, supra,* the right to counsel at that stage in the proceedings against him. Once those warnings are given, it is unnecessary to repeat them each time the officer questions a defendant, *State v. Gilcrist,* 91 Wn.2d 603, 607, 590 P.2d 809 (1979); *State v. Vidal,* 82 Wn.2d 74, 78, 508 P.2d 158 (1973), or prior to each investigative procedure conducted by the officers. For these reasons, we find there is a difference between failure to advise a criminal defendant of his right to counsel prior to the Breathalyzer test and refusal, as in *Fitzsimmons,* to provide access once counsel is requested. *See People v. Craft,* 28 N.Y.2d 274, 270 N.E.2d 297, 321 N.Y.S.2d 566 (1971).

Further support for the fact that the Breathalyzer test itself does not trigger the right to counsel may be found in *United States v. Wade,* 388 U.S. 218, 227–28, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, 1932–33 (1967). There, the Court noted compilation of real evidence against an accused such as scientific testing (blood samples) is not a critical stage:

> Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross–examination of the Government's expert witnesses and the presentation of the evidence of his own experts.[1]

---

[1]The dissent distinguishes *Wade* on the basis that Court was not presented with a case where, as in this state, chemical testing to determine alcoholic content is determinative of guilt. However, the court in *State v. Franco, supra* at 828–29, addressing a different issue, held the Breathalyzer sample does not prove the crime in this state. The court pointed out the defendant may controvert the test result in a number of ways, *e.g.,* expert testimony, lay witnesses who observed defendant and the defendant's own testimony regarding the actual effect of the alcohol. Although the statute had been amended to state a person with a test result of 0.10 percent is guilty, the court concluded at page 28, "[t]he defense has the same opportunity to attack that reading as they always have had . . ." Thus, the change in the statute does not change the nature of the defense and *Wade* is applicable. Moreover, this supports our analysis that it is the *stage* immediately after arrest, *not the Breathalyzer* test alone, which is critical since all of the evidence mentioned in *Franco* controverting the test is gathered during this stage. Thus, the right to counsel applies to the entire stage and notice of that right should be given immediately after arrest and charging of the defendant.

*Sims v. State,* 413 N.E.2d 556 (Ind. 1980), cited by defendant, does not change this result. In that case it was held a criminal defendant must be specifically informed of his right to counsel prior to consenting to a search before he is deemed to have waived that right. Even if a Breathalyzer test is compared to a search of a person, *see Schmerber v. California, supra* at 767–68, Washington courts hold, contra to *Sims,* that *Miranda* warnings need not be given at all before a request for a consent to search because a search is designed to elicit physical and not testimonial evidence. *State v. Rodriguez,* 20 Wn. App. 876, 880, 582 P.2d 904 (1978); *State v. Messinger,* 8 Wn. App. 829, 838, 509 P.2d 382, *review denied,* 82 Wn.2d 1010 (1973), *cert. denied,* 415 U.S. 926, 39 L. Ed. 2d 483, 94 S. Ct. 1433 (1974); *State v. Martin,* 2 Wn. App. 904, 909, 472 P.2d 607 (1970), *cert. denied,* 402 U.S. 912, 28 L. Ed. 2d 655, 91 S. Ct. 1393 (1971).

Defendant contends, however, the warnings given confused him; he thought his right to counsel applied only to questioning and since he was indigent, he could not obtain counsel until appointed for him in a later proceeding. He argues under *State v. Fitzsimmons, supra,* and JCrR 2.11(c)(2), it was the responsibility of the police to assure him immediate access to either a public defender or other attorney willing to act as counsel for an indigent defendant.

The warnings given adequately advised defendant in clear and simple terms he had a right "at this time" to an attorney of his own choosing; if he could not afford an attorney, one would be appointed for him; he had a right to refuse to take the Breathalyzer test and the consequences of that refusal.[2] Moreover, defendant never informed the officers he wanted an attorney, he could not afford one, or he had any doubts concerning his rights. Instead, he

---

[2]Although the better practice would have been to inform defendant he had a right to have an attorney present at that time, even though indigent, that warning would simply have been a reiteration of the rights already stated. Defendant's contentions address only the form, not the substance, of the warnings given. *See State v. Fullen,* 7 Wn. App. 369, 375, 499 P.2d 893 (1972).

acknowledged he understood his rights, spoke with the police, and agreed to take the Breathalyzer test.

JCrR 2.11(c)(2) states:

> At the earliest opportunity a person in custody *who desires counsel* shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer.

(Italics ours.) This rule does not require police officers to anticipate unexpressed confusion. Further, we agree with *State v. Halbakken,* 30 Wn. App. 834, 836–37, 638 P.2d 584 (1981):

> [N]either *Tacoma v. Heater* nor *State v. Fitzsimmons* requires the State to insure that those arrested for driving while intoxicated be represented by counsel immediately after arrest and charging. . . .
> . . . We are satisfied that our Supreme Court has not imposed a duty upon the State to provide access to counsel when no such request has been made.

Defendant here was adequately advised of his right to counsel.

Affirmed.[3]

ROE, J., concurs.

McINTURFF, C.J. (dissenting)—I must dissent from my colleagues. The defendant should be informed that he may request access to counsel before taking the Breathalyzer.

The Sixth Amendment right to counsel attaches at any critical stage involving actual confrontation between the accused and representatives of the State. *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964). Although the Sixth Amendment does not generally apply to the taking of physical evidence, *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893 (1980), indicated the implied consent statute "forcefully demonstrates the

---

[3]We note that Division One of this court reached a similar result for different reasons in *State ex rel. Juckett v. Evergreen District Court,* 32 Wn. App. 49, 645 P.2d 734 (1982).

need to allow the defendant access to counsel, if desired, to assist in making the decision whether to submit to chemical sobriety tests". *Fitzsimmons, supra* at 448. The court further noted:

[T]he State has acknowledged the *critical nature* of the requested chemical sobriety testing and has required the defendant to make a decision regarding testing that could often be better made with the advice of an attorney.

(Italics mine.) *Fitzsimmons, supra* at 449. The practicalities of a query regarding a defendant's desire to have access to counsel may at times seem futile; however, in situations such as we face here, it is critically meaningful. An inquiry by police officers regarding access to counsel will allow the defendant to receive legal advice, should he or she desire, before making a decision whether to be given a test to determine alcohol content in the blood. Mr. Wurm should not be penalized merely because he failed to request access to an attorney, when such a request might have been made had he been aware that access was available. *Fitzsimmons, supra.*

The Sixth Amendment provides in pertinent part: "In all *criminal prosecutions,* the accused shall enjoy the right . . . to have the assistance of counsel for his defense." (Italics mine.) The Supreme Court construed the Sixth Amendment provision to "apply to critical stages of the proceeding . . ." *United States v. Wade,* 388 U.S. 218, 224, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967). *See also Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967). In *Fitzsimmons, supra,* the court noted a more recent statement by the United States Supreme Court regarding the Sixth Amendment right to counsel:

[I]n *United States v. Ash,* 413 U.S. 300, 37 L. Ed. 2d 619, 93 S. Ct. 2568 (1973), the Supreme Court stated that the Sixth Amendment *right to counsel* extended only to events during which "the accused *required aid in coping with legal problems* or *assistance in meeting his adversary",* *United States v. Ash, supra* at 313, where "the accused was confronted, just as at trial, by the procedural system, or by his expert adversary, or by both."

*United States v. Ash, supra* at 310. The time immediately *after arrest and charging for driving while under the influence, when the defendant is still in custody and must immediately make the decision whether to submit to the Breathalyzer, arrange for further testing and observation of his mental state or forever lose any defense, is certainly such an event.* Only by acknowledging the defendant's right of access to counsel can we insure he is meaningfully assisted in his defense.

. . . We reiterate the importance of intoxication as an element of the offense in requiring a rule that allows the defendant immediate access to an attorney.

(Italics mine.) *Fitzsimmons, supra* at 445. The majority's interpretation of *Fitzsimmons* makes the latter a nullity. My reading of *Fitzsimmons* indicates the implied consent statute has no effect on the right to counsel at this stage of the proceeding. *Fitzsimmons, supra* at 449. *Cf. State ex rel. Juckett v. Evergreen District Court,* 32 Wn. App. 49, 645 P.2d 734 (1982) (no right to access unless requested).

The intent of the implied consent law is to inferentially coerce the driver suspected of driving under the influence into consenting to chemical testing or face a mandatory 6–month revocation of a driver's license.[4] The evidence may later be used in a criminal proceeding.[5] Consequently, the driver must make a vital decision which could severely impact his or her ability to pursue a chosen livelihood since occupational permits cannot be granted after revocation of

---

[4]In *Bell v. Burson,* 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971), the Supreme Court noted a driver's license is no longer a luxury or mere privilege but a necessity in earning a livelihood:

Once [driver's] licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

(Citations omitted.)

[5]If the driver was involved in an accident resulting in death or serious injury he or she may be faced with serious criminal proceedings in which the test results could be important evidence against the driver. *See, e.g.,* RCW 46.61.520; RCW 9A.36.050.

a driver's license pursuant to RCW 46.20.311(2). *See also* RCW 46.20.391(4).[6]

As noted in *Fitzsimmons, supra,* the State has acknowledged the critical nature of chemical sobriety testing which requires the defendant to make what may later be a devastating decision. Under this rationale, I find no valid reason why such evidence–gathering by the prosecution should be any less subject to scrutiny than other constitutionally protected areas, *i.e.,* lineups or custodial interrogations.

In *United States v. Wade, supra,* the Court noted the necessity of counsel at every critical stage of the proceeding in order to preserve a fair trial. In defining a critical stage, courts must "analyze whether potential . . . prejudice to defendant's rights inheres in the . . . confrontation . . ." *Wade,* at 227. Although the Court in *Wade* indicated that scientific testing did not rise to a level of a critical stage, it was not presented with a case whereby chemical testing to determine alcoholic content is statutorily determinative of guilt in a present–day prosecution for driving while intoxicated. RCW 46.61.502 states in part:

A person *is guilty* of driving while under the influence of intoxicating liquor or any drug if he drives a vehicle within this state while:

(1) He has 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath . . .[7]

---

[6]RCW 46.20.391(4) states:

"(4) The director shall cancel an occupational driver's license upon receipt of notice that the holder thereof has been convicted of operating a motor vehicle in violation of its restrictions, or of an offense which pursuant to chapter 46.20 RCW would warrant suspension or revocation of a regular driver's license. Such cancellation shall be effective as of the date of such conviction, and shall continue with the same force and effect as any suspension or revocation under this title."

[7]Additionally, RCW 46.61.515 states in part:

"(1) Every person who is convicted of a violation of RCW 46.61.502 . . . shall be punished by imprisonment for not less than one day nor more than one year, and by a fine of not more than five hundred dollars. . . .

"(2) On a second or subsequent conviction under RCW 46.61.502 . . . within a five year period a person shall be punished by imprisonment for not less than seven days nor more than one year and by a fine not more than one thousand

(Italics mine.) Thus, the decision to acquiesce in the administration of a Breathalyzer test is meaningful to the driver and is obviously "better made with the advice of an attorney". *Fitzsimmons, supra* at 449.

An equally important basis for dissent is the potential for confusion on the part of drivers similarly situated with Mr. Wurm. Under a common procedure, *Miranda* warnings in pertinent part were signed at the station:

> 3. I have the right at this time to an attorney of my own choosing and have him present *during questioning* and the making of *any statements; . . .*

(Italics mine.) The majority states, "He was then asked to submit to a Breathalyzer test". Mr. Wurm had just been informed of his right to an attorney during any "questioning" or the "making of any statements". This, of course, refers to testimonial evidence or verbal communication.[8] It would not be unreasonable for him to conclude that access to an attorney did not attach at the Breathalyzer stage. Obviously, the breath test is scientific as opposed to testimonial evidence. Consequently, unless a driver *knew* he would not be denied access to an attorney *if requested* (under *Fitzsimmons*), he or she could subjectively feel access is entirely precluded based on the verbiage contained in the previously signed *Miranda* warning. If access is to be made available on request, why not ask the driver if he wishes to speak with an attorney before making the decision? The Breathalyzer test should not be given in a "gamesmanship" atmosphere of "hide–and–seek"—there is much to be lost by a driver who does not know the "rules".

---

dollars. . . . If such person at the time of a second or subsequent conviction is without a license or permit because of a previous suspension or revocation, the minimum mandatory sentence shall be ninety days in jail and a two hundred dollar fine. The penalty so imposed shall not be suspended or deferred."

[8]The majority relies on *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982). That case merely indicated that a breath sample taken from a DWI suspect is not "testimonial" in nature. *Franco, supra* at 825. The court ruled, therefore, that the implied consent law was not violative of the Fifth Amendment. I view the Breathalyzer as a "critical stage" under the Sixth Amendment.

For the foregoing reasons, and in the interest of fairness, where the chemical testing procedures are not unreasonably delayed, a driver should be offered the benefit of legal advice prior to testing.

Reconsideration denied July 16, 1982.

Review granted by Supreme Court October 22, 1982.