## STATE v. WILSON.
No. 70-C-1657.
Circuit Court, Fifteenth Judicial Circuit.
October 20, 1970.

Daniel T. K. Hurley, Assistant County Solicitor, West Palm Beach, for the appellant.

Billy R. Jackson, Palm Beach, for the appellee.

JAMES R. KNOTT, Circuit Judge.

This is an appeal from the small claims-magistrates court, Palm Beach County. The question presented relates to whether the appellee, Michael T. Wilson, having been arrested and taken into

custody for operating a motor vehicle while under the influence of alcohol, had a right to the presence of his attorney before giving a sample of his breath for chemical analysis.

Appellee was arrested for driving while under the influence of alcoholic beverages (§317.201, F. S.), and was tried and acquitted by the court sitting without a jury. The proceeding below included a trial on the merits of the "DWI" charge and an "implied consent" hearing (§322.261, F. S.). As a result of the latter, the trial court found —

> (1) ". . . [T]hat the arresting officer had reasonable cause to believe that the person had been driving a motor vehicle in this state while under the influence of alcoholic beverages;"
>
> (2) ". . . [T]hat the person was placed under lawful arrest;"
>
> (3) ". . . [T]hat the defendant had been told that his driving privileges would be suspended if he refused to submit to the test . . .;"
>
> (4) That because "the defendant insisted upon the presence of his lawyer before he submitted to the breathalyzer test . . . [he] did not refuse to submit to the test."

Apellant challenges the trial court's fourth finding. This court concludes (1) that the proceeding outlined in §322.261 (sometimes called the "implied consent law") is civil in nature, rather than criminal, (2) that an individual is not entitled as a matter of right to the presence of counsel before submitting to a chemical test, and (3) that a refusal to submit to a chemical test without the presence of counsel constitutes a "refusal" within the meaning of the statute. The judgment of the trial court must therefore be reversed.

Appellee was arrested in the city of Belle Glade at approximately 1:05 a.m. on January 7, 1970, and charged with operating his motor vehicle while under the influence of alcohol. He was immediately advised of his constitutional rights and told of the provision of the implied consent law which requires a person to submit to an approved chemical test or suffer the loss of his license for a period of six months.

Appellee was taken to the Belle Glade substation, arriving there at about 1:20 a.m. He was again advised of his constitutional rights and of the implied consent law provision. While indicating a willingness to take the test, he said that he would first like to make some telephone calls. Several calls were made, one of them to appellee's attorney in West Palm Beach, after which appellee

stated, with respect to the chemical test, "Whenever my lawyer gets here, I'll be glad to do whatever I'm supposed to do." After waiting an hour and fifteen minutes, the officers told appellee that they were offering him a last opportunity to take the breathalyzer test and that a failure to do so would result in the automatic suspension of his license for a six-month period. He answered that he would wait for his attorney. At this point a "refusal slip" was executed.

Appellee concedes that driving is not a natural or unrestricted right, but a privilege subject to reasonable regulation under the police power of the state in the interest of public safety and welfare. See City of Miami v. Aronovitz, (Fla. 1959) 114 So.2d 784. He agrees that the implied consent law is a reasonable and valid exercise of the police power. But he contends that the proceeding below was criminal in nature and that an appeal therefrom must be governed by the appellate rules applicable to *criminal* appeals.

§322.261, the implied consent law, details the process by which a driver's license is suspended for failure to submit to a chemical test and the means by which he may obtain a judicial review of the administrative action. If a driver refuses to submit to a test, a "refusal slip" is executed and forwarded to the department of public safety and motor vehicles. The department automatically suspends the driver's license and advises him that he may, within a ten-day period, petition for hearing.

§(1)(d) of the statute expressly confers "hearing jurisdiction" upon the court having jurisdiction over the pending criminal charge. The court has the responsibility of determining four issues —

1. Whether the arresting peace officer had reasonable cause to believe the person had been driving a motor vehicle in this state while under the influence of alcoholic beverage;

2. Whether the person was placed under lawful arrest;

3. Whether he refused to submit to the test after being requested by a peace officer; and

4. Whether . . . he had been told that his driving privilege would be suspended if he refused to submit to such test.

Due to the fact that the parties and witnesses are the same in both cases and that their testimony is relevant to both issues, it appears to be a common practice to combine the implied consent hearing with the trial on the merits of the criminal charge. (In this case the "refusal slip" was not forwarded to Tallahassee, but was inadvertently misplaced, it was recovered shortly before the

date set for the "DWI" trial. This fact was brought to the court's attention during the trial and counsel for the defense and the state were asked if they desired a ruling on the issue of implied consent. Both answered affirmatively, thereby waiving the requirement of notice and petition.)

An analysis of the implied consent law reveals none of the indicia of a criminal prosecution. It simply states one of the conditions precedent to the granting of the driving privilege. The law does not compel a driver to submit to a chemical test. He retains the option of taking or refusing the test. Should he choose the latter, however, the law provides that he shall forfeit, for a period of six months, the privilege of driving upon the public highways of the state. Rather than a criminal penalty or punishment for driving while impaired, it is an assertion of the state's right to protect other users of the highways. (The legislature changed the suspension period from six to three months, effective July 2, 1970.)

An arrest for a violation of the criminal traffic code triggers the implied consent law. The same motor vehicle operation may give rise to two separate and distinct proceedings — one an administrative procedure, civil in nature, and the other a criminal action. Each action is independent of the other, even though as in this case the civil hearing and criminal trial happened to be combined for purposes of convenience and judicial economy. The outcome of one is of no consequence to the other. Finocchairo v. Kelly, 226 N.Y.S.2d 403, 181 N.E.2d 427, cert. denied, 370 U.S. 912, 82 S.Ct. 1259, 8 L.Ed.2d 405. See also, Blow v. Commissioner of Motor Vehicles, (S.D.) 164 N.W.2d 351; Blydenburg v. David (Mo.) 413 S.W.2d 284; Bowers v. Hults, 249 N.Y.S.2d 361; Deaner v. Commonwealth, (Va.) 170 S.E.2d 199; Finley v. Orr, 69 Cal. Rptr. 137; Garcia v. Dept. of Motor Vehicles, (Ore.) 456 P.2d 85; Gottschalk v. Sueppel, (Iowa) 140 N.W.2d 866; Lee v. State, (Kan.) 358 P.2d 765; Prucha v. Dept. of Motor Vehicles, (Neb.) 110 N.W.2d 75, 88 A.L.R.2d 1055; State v. Hedding, (Vt.) 172 A.2d 599; State v. Starnes, (Ohio) 254 N.E.2d 675. In the case last cited, the Ohio Supreme Court upheld the validity of the state's implied consent law against appellant's contention that the same was criminal in nature and, since it did not require proof beyond a reasonable doubt, it was a violation of due process. The court held actions under the statute "are civil and administrative in nature and are intended for the protection of the traveling public and are independent of any criminal proceedings . . ."

The sixth amendment to the federal constitution was asserted in the trial below as one of the grounds upon which appellee based his claim of a right to the presence of counsel before submitting to a chemical test. So far as pertinent this amendment provides, "In

all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." Our state constitution contains an almost identical provision. Neither provision, however, can properly apply to an administrative proceeding of this nature. As stated in an annotation to In re Groban, 352 U.S. 330, 77 S.Ct. 510, and at pages 1865, 1866 of 1 L.Ed.2d —

> "At the outset it is to be noted that the sixth amendment to the federal constitution, providing for the assistance of counsel to the accused 'in all criminal prosecutions,' is subject to the 'criminal prosecution' limitation stated therein, and, as a result, has no bearing on the question whether there is a right to counsel in administrative proceedings."

Appellee also contends that the reading of the *"Miranda"* rights, followed by a reading of the requirements of the implied consent law, causes ambiguity and confusion which precludes a finding of knowing and wilful refusal to submit to the test. The record indicates that on at least two occasions, appellee was advised of the following constitutional rights —

> "You have a right to remain silent and not answer any questions. Any statement you make, must be freely and voluntarily given. You have the right to the presence of a lawyer of your choice, before you make any statements and during any questioning. If you cannot afford a lawyer, you are entitled to the presence of a court appointed lawyer, before you make any statement, or during any questioning.

> "If at any time during this interview, you do not wish to answer any questions, you are privileged to remain silent. I can make no threats or promises to induce you to make a statement. This statement must be of your own free will.

> "Any statement can and will be used against you in a court of law."

Asked if he understood this, appellee responded, "Yes, sir. I understand it." The following provision was then read to him —

> "I'm now offering to give you an approved chemical test of your breath for the purpose of determining the alcoholic content of your blood. If you refuse to take this chemical test, your privilege of operating a motor vehicle will be suspended for a period of six months."

During cross-examination at trial, appellee produced his driver's license and read —

> "I hereby consent for any chemical test for . . . sobriety, as required by section 322.261, F.S., effective July 1, 1968."

146

He testified that his signature appeared under this statement, showing actual as well as presumed knowledge of the state law.

The language of the *Miranda* rights places a limitation upon their application: they provide for the presence of counsel during in-custody questioning, and have no bearing upon the extraction of physical evidence, e.g., fingerprints, breath, or blood, from an accused.

Appellee conditionally refused to submit to the breathalyzer test. But as the Supreme Court of South Dakota in Blow v. Commissioner of Motor Vehicles, supra said —

> "The implied consent statute does not sanction a 'qualified refusal,' . . . or as the New York court termed it a 'conditional refusal' . . . The statute requires a licensee to make a choice."

§(1)(a) of the Florida statute states that the choice "shall be incident . . . to a lawful arrest . . ." The rationale for this provision was also supplied by the court in *Blow,* when it observed that the scientific accuracy revealed by a test may exonerate a suspect just as readily and conclusively as it may incriminate him.

The judgment appealed from is reversed, and the case is remanded for further proceedings consistent herewith.