188

## STATE v. KUMINSKI
No. 83-9972-TT A02
County Court, Palm Beach County
March 1, 1983

Jeff Colbath, Asst. State Attorney, for plaintiff.

William J. Bosso, Jr., for defendant.

JAMES T. CARLISLE, County Judge, Criminal Division.

The issue in this case is whether Theodore Joseph Kuminski refused to take the breathalyzer test.

The facts of the case are gleaned from the deposition of Trooper Turnquist. The State and defense counsel stipulated that I decide on the basis of this deposition.

Trooper Turnquist arrested a driver of a van for DWI. Mr. Kuminski was a passenger in the van. Trooper Turnquist came to the conclusion Mr. Kuminski was also impaired. (T.4). He told Mr. Kuminski he was in no condition to drive (T.4). Mr. Kuminski went across the street to make a phone call (T.5). Trooper Turnquist was doing his paper work when he saw the van driving off. Trooper Turnquist stopped the van (T.9) and arrested Mr. Kuminski (T.10).

Q. Did you then take them down to the police station?

A. Well, before then I had advised him of his rights, which I didn't have to but I always do; and I advised him of the consent laws for DWI, refusal to submit; and asked him if he wished to take a chemical test.

Q. Had you asked the other fellow that also?

A. Right. He refused, kept saying he wasn't going to say anything until he saw an attorney. I explained to him that he had to tell me yes or no, whether he was going to take the test; if he wished to have an attorney present during the test, he could do so. He said he didn't want to say anything until he talked to an

attorney. I said, "Fine. Is that a refusal?" And he said, "No, no." I said, "Well, it's either yes or no."

Q. And basically the other kid did the same thing?

A. Right.

Q. So they said, "We will not tell you whether or not we are going to take the test until we talk to the attorney"?

A. Wouldn't do anything; at which time I advised them of the consent law and said, "It's either yes or no." They just said, "We won't do anything."

Q. Without talking to an attorney?

A. That's right. I kept advising them, what you do now will be considered a refusal.

Q. But at some point, apparently, they —

A. It was pretty evident to me that they were refusing.

Q. Where did you transport them then?

A. To the Palm Beach County Sheriff's Office.

Q. Now, the Palm Beach County Sheriff's Department, that's on First Street there?

A. Right.

Q. Do they have Breathalyzer facilities there?

A. Yes, they do.

Q. Okay. Did you ever ask them, once they got there, whether they would take the test?

A. No. once they refuse, I start the paperwork on it, that's it.

Q. So actually they had refused in the car?

A. Right, right inside the car.

Q. So when you transported them down there —

A. It was just straight to the jail, book in.

Q. You didn't ask them again if they wanted to take the test?

A. No, they had had their chance the first time at the scene, we don't waste our time keep asking them and asking them and begging and begging.

Q. But when you got to the police station did you say, "Fellows, if you want to call your lawyer now you can call him now?"

A. They never asked. They just wanted to know when they could get out. Once they reached the jail they were more cooperative. It's a bit too late; once I leave from the scene, that's it.

Q. So generally you will not — once they refuse at the scene, then that's it?

A. That's it.

Q. They've made their bed and they have to sleep in it?

A. Right.

Q. But Officer, I mean, if a fellow did ask to talk to an attorney before he gave you an answer, doesn't he have that right?

A. Not necessarily. He wasn't arrested for a felony; it was a simple traffic crime, which does not require an attorney. And the test that he was being given is not such a test that it is really incriminating; which I explained to them each part of the test they will be taking, and it's either yes or no, let me know now, because I can get an operator prepared and ready to test you gentlemen."

In *State v. Wilson,* 34 Fla. Supp. 141, the defendant was arrested for driving while impaired at 1:05 a.m. He was taken to the Belle Glade Sub-Station, arriving there at approximately 1:20 a.m. After being advised of his constitutional rights and of the Implied Consent Law, he indicated a willingness to take the test. He said he would first like to call his attorney. Defendant called his attorney in West Palm Beach, thirty-five miles away, after which he stated: "Whenever my lawyer gets here I will be glad to do whatever I am supposed to do." After waiting an hour and fifteen minutes the officer told Wilson that they were offering him a last opportunity to take the breathalyzer test and that failure to do so would result in the automatic suspension of his license for a six

month period. He answered that he would wait for his attorney. At that point the refusal slip was executed.

There the Circuit Court of Palm Beach County, Judge Knott presiding, ruled that the giving of a breathalyzer test is an administrative procedure and that the right to the presence of counsel did not attach thereto. The Court held that Wilson conditionally refused to submit to the breathalyzer test and held that the implied consent statute does not sanction a qualified refusal or conditional refusal.

In 1976 I decided *State v. Oliver*, 47 Fla. Supp. 111. There the defendant was advised of his rights against self-incrimination and his right to counsel under the standard Miranda Warning. The defendant was also properly advised of the consequences of his refusal to take the breathalyzer test. As is usually done in cases of this kind, the officer who was assigned to administer the breathalyzer test began to ask the defendant a series of questions concerning his destination, what he had had to eat, the amont he had had to drink, and other questions which are normally asked in conjunction with giving a breathalyzer test. The defendant then requested an opportunity to telephone his attorney and expressed a reluctance to continue with the interview. He was advised that no attorney was necessary for the administration of a breathalyzer test. The defendant continued to insist upon talking to an attorney and ultimately the officers certified his refusal.

I said in *Oliver*, supra:

"(*Wilson*, supra) does not stand for the proposition that a defendant should be refused the right to consult at least telephonically with his attorney, where the administration of the test will not be unreasonably delayed. Fundamental concepts of due process require that this minimal consultation not be frustrated irrespective of whether due process requires the presence of counsel.

. . .

The possible destruction of evidence resulting from the sixty second period required for defendant to consult his attorney regarding the complexities of Section 322.261 F.S., and the possible implications of his decision whether to take the test, are minimal when compared to the value placed upon the right to counsel as enunciated by the Federal Constitution and the Florida Constitution."

I was subsequently reversed by Judge Williams\*. Judge Williams was later reversed by the Fourth District on grounds not relating to the question before me now. With all due respect, I submit Judge Williams was wide of the mark.

The alcohol content of a person's blood dissipates with the passage of time. No one has the right to unreasonably delay the administration of a breathalyzer test by insisting on the right to consult with counsel. That was the case in *Wilson*, supra. That is not to say one should not be given the opportunity to consult with counsel if doing so will not unreasonably delay the administration of the test, *State v. Oliver*, supra. Each case must be decided on its own facts.

The question is further compounded by the practice of asking an individual to perform certain physical tests as well as asking them to answer such questions as: ''Have you been drinking?'' ''What have you been drinking?'' ''How much have you been drinking?'' ''When did you eat last?'' ''When did you begin drinking?'' ''When did you stop drinking?'' ''Where were you driving?'' ''When did you leave?'' The Implied Consent Law does not require these tests be performed or the questions answered. All that is required is that the person under arrest blow into a tube. Every man placed under arrest is entitled to the advice of counsel. A drunk man is as much entitled to the advice of counsel as a sober one, and much more in need of it. The person should be permitted to consult with counsel if only for the purpose of determining exactly what was required under the Implied Consent Law.

Perhaps the leading case on this question is *State v. Prideaux*, 247 NW 2d 385 (1976 S.Ct. Minn). The Minnesota Supreme Court held a person has the right to consult with a lawyer of his own choosing before deciding whether to submit to a breathalyzer test. There the Minnesota Supreme Court all but held there was a constitutional right to counsel before deciding whether to consent to chemical testing. The Court did not rest its decision on constitutional grounds only because the same result could be reached on statutory grounds. In *People v. Gursey*, 239 NE 2d 351, 352 (1968) the New York Court of Appeals held:

> ''In light of current recognition of the importance of counsel in criminal proceedings affecting significant legal rights, law enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand. This

---

\*Judge Williams' opinion may be found at 47 Fla. Supp. 111

court recently noted, in another context, that: 'As a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel.' (Citations omitted). In the present case, defendant possessed a number of statutory opinions which could be asserted only during the transaction at the station house, and concerning which the advice of counsel, if available, was relevant.''

''. . . If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel.'' *supra* at 353

There is an excellent annotation on this subject at 97 ALR 3d 852. One need only Shepardize *Prideaux* and *Gursey* to find a host of cases on this point. I do not have the time to cite these cases, but it is apparent the trend is to follow *Prideaux* and *Gursey*. In *Troy v. Ohio,* 303 NE 2d 925 (1973) the Ohio court held:

''The refusal to permit a person accused of (DWI) which is now classified as a serious misdemeanor, to consult with counsel would be clearly unconstitutional under both the Sixth and Fourteenth Amendments 'Due Process of Law' clauses of the United States Constitution.''

*Heles v. State of South Dakota,* 350 F.Supp. 646 (1982) involves two cases. Heles' single request to call an attorney was characterized by the investigating officer as a refusal. Braunsreither was arrested at midnight and allowed to call an attorney. As of 1:30 a.m. he was still unable to contact an attorney. Some time later Braunsreither agreed to take the test. The officer told him it was too late and marked him down as having refused the test. It was held that Braunsreither's right to counsel was not violated. Heles' right to counsel was violated.

''In summary, the court holds that when a person is arrested for DWI and the person requests to speak to an attorney prior to testing, the person must be allowed a reasonable opportunity to attempt to contact an attorney. If an attorney cannot be reached within a reasonable period of time, the person may need to make an independent decision without the aid of counsel. The court finds in the present case that while Braunsreither's constitutional rights were protected, those same rights were denied in Heles' case''. 530 F.Supp. 654 (1982).

In *State ex rel Juckett v. Evergreen District Court,* 645 P.2d 734, (Ct. of Appeals, Washington, 1982) the issue was whether motorists arrested for DWI must be advised of their right to consult with an attorney before submitting to a breathalyzer test. The court held they need not be specifically advised. This case is valuable because it deals comprehensively with the entire issue of right to counsel prior to taking a breathalyzer. *Juckett,* supra, cites *Tacoma v. Heater,* 409 P.2d 867 (1966) wherein it was held unconstitutional to prevent a person charged with DWI from having access to legal advice. This decision was reaffirmed in *State v. Fitzsimmons,* 620 P.2d 893 (1980). That case went on to the United States Supreme Court, which remanded for a determination whether the decision was based upon Federal or state constitutional grounds or both, 66 L.Ed. 2d 240. The Supreme Court of Washington held:

> "Reliance on federal precedent and federal constitutional provisions would not preclude us from taking a more expansive view of the right to counsel under state provisions should the United States Supreme Court limit federal guarantees in a manner inconsistent with Heater and Fitzsimmons." *Fitzsimmons,* supra, 620 P.2d 999.

*Wolf v. Department of Motor Vehicles,* 616 P.2d 688 (1980) held access to counsel has no application in a license revocation because such actions are essentially civil and not criminal proceedings. *Seattle v. Box,* 627 P.2d 584 (1981) held that police officers are permitted to continue with routine processing after the defendant has contacted an attorney, so long as the attorney is not denied access to the defendant. In other words, right to access of counsel need not disrupt normal police procedures.

I am pursuaded there is a limited right to consult with counsel prior to deciding whether to submit to a breathalyzer test. The right is limited to the extent that its exercise cannot unreasonably delay the administration of the test. There is no need to advise of this right.

I recently presided over a case in which Deputy Sheriff Kendrick interrupted the television taping of the person under arrest to permit her to call her attorney in Ohio. The jury had the opportunity to view the television tape of that defendant refusing to submit to the breathalyzer test after having consulted with that attorney. The jury convicted.

The petition for implied consent is granted, and, on the court's own motion, an Order in Liminie is hereby issued prohibiting the State from introducing evidence of the refusal in this case.