Stavros J. PAPPAS, a/k/a Steven J. Pappas, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–710.**

Court of Appeals of Alaska.

May 10, 1985.

---

Frederick T. Slone, Dennis, Kibby and Moss, Anchorage, for appellant.

Scott Jay Sidell, Asst. Municipal Prosecutor, James Ottinger, Municipal Prosecutor, and Jerry Wertzbaugher, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Stavros J. Pappas pled no contest to driving while intoxicated and refusal to submit to a chemical test. AMC 09.28.020(A) and AMC 09.28.022(C). He claims on appeal that the district court erred in denying his Motion to Suppress and Dismiss on the grounds that he was denied a reasonable opportunity to contact counsel prior to deciding whether to take the breathalyzer.[1] We affirm.

In the early morning hours of July 5, 1984, Anchorage police officer Frank Weaver was dispatched to investigate a motor vehicle accident that had become a fist fight. Officer Weaver arrested Pappas at the accident scene for driving while intoxicated. Officer Weaver took Pappas to the Sixth Avenue Jail, where he turned Pappas over to Officer Dang for processing.

In Officer Weaver's presence, Pappas told Officer Dang that he wanted an attorney. Officer Dang asked Pappas whether he wanted a public defender. Pappas said yes, he wanted a public defender. Officer Weaver took Pappas into an interview room and dialed the 24-hour call number for the public defender. Officer Weaver told the answering service that someone needed a lawyer. A short time later, public defender Craig Howard returned the call. Officer Weaver handed the phone to Pappas.

Officer Weaver then left the interview room and stood eight to twelve feet away from Pappas. Officer Weaver testified that he was as far away from Pappas as he could go without losing visual contact. Officer Weaver also testified that from that distance he would not have been able to overhear a person speaking in a normal tone of voice. Officer Weaver stated that the walls of the interview room are carpeted and that there was a great deal of surrounding commotion that night.

---

1. This appeal is taken pursuant to *Oveson v. Anchorage,* 574 P.2d 801 (Alaska 1978), and *Co-oksey v. State,* 524 P.2d 1251 (Alaska 1974).

Officer Weaver did overhear Pappas, however, since Pappas was shouting and yelling into the phone. Pappas testified that the person on the phone identified himself as a public defender, and that he (Pappas) knew that a public defender was an attorney. Pappas testified that he was "angry" at that point. After about two minutes, Pappas hung up the phone.

Officer Weaver testified that Pappas made no request to contact a specific attorney, nor did he request a phone book. Officer Weaver testified that Pappas then demanded that the police produce an attorney in person. Officer Weaver did not think that the request was reasonable, so he returned Pappas to Officer Dang.

Pappas admitted that he did not request a specific attorney. Pappas said that his objection to the public defender was that he "didn't know who was on the line," even though the caller identified himself. Officer Weaver testified that Pappas told him that he wanted "somebody he could see, not some dumb [person] on the phone." Pappas later told Officer Dang on videotape that he wanted "an attorney not affiliated with an officer of the state of Alaska."

Officer Weaver testified that he does call a specific attorney if a DWI suspect asks for one. He stated that police procedure is that if a person requests an attorney without naming one, a public defender is called.

Officer Dang testified that Pappas never requested to use the phone himself, and apparently had no private attorney in mind. Officer Dang stated that if Pappas had asked for a specific attorney, that attorney would have been contacted. During the videotaping, Pappas repeatedly stated that he wanted an attorney present, but Officer Dang ignored the request because of his understanding that there is no right to have an attorney present during a breathalyzer examination.

Judge Wolverton made extensive findings of fact. Judge Wolverton found that July 5th was a busy night at the jail and that there was some pressure in the processing procedure. He found that Pappas

assented to speak with the public defender, Craig Howard, and that there was no indication in the record of why Pappas could not have obtained the advice and counsel he needed from Craig Howard. Judge Wolverton continued:

I find that the defendant had agreed to speak to the public defender and no request was made for a specific attorney thereafter. There's no evidence that had not Mr. Pappas simply reasonably asked Officer Dang to call a private attorney because he was, for whatever reason, dissatisfied with Mr. Howard and wanted to call immediately, that he could not have done so.

I'm also going to find that this was a private conversation under the circumstances. The testimony that I'm going to have to rely upon and that I do find credible is that the room was quieted by carpet on the walls and floors, and that a normal voice under the circumstances of that evening would not have been overheard. The only things that were overheard were the yelling of Mr. Pappas which was not warranted and certainly not part of the main private conversation and in any event Mr. Pappas seems to me could not rely upon the privacy issue since it was an attorney he didn't want to talk with anyway.

Judge Wolverton then admonished the municipality to "try harder" to comply with our decision in *Farrell v. Anchorage*, 682 P.2d 1128 (Alaska App.1984). Judge Wolverton also stated his opinion that when a person asks repeatedly for an attorney, whether the request is reasonable or unreasonable, the police should respond.

 On appeal, Pappas claims that he had a right under *Copelin v. State*, 659 P.2d 1206 (Alaska 1983), AS 12.25.150(b), and Alaska Rule of Criminal Procedure 5(b) to contact "his own counsel." We agree that a DWI suspect cannot be forced to contact an attorney chosen by the police; however, this did not occur in the instant case. Judge Wolverton found that Pappas *agreed* to speak with the public defender, and Pappas does not dispute this. Appar-

ently, Pappas is arguing that if he is dissatisfied with an attorney he has agreed to speak with, he should be permitted another opportunity to contact counsel. We believe that Pappas' argument is foreclosed on the record before us because Pappas never requested a specific attorney or even asked to see a phone book.

■ We also reject the contention that Pappas' phone conversation with the public defender did not constitute contact with an attorney under *Copelin* either because Pappas "did not know who was on the other end of the line" or because he did not wish to speak with a lawyer affiliated with the state of Alaska. Pappas was under no obligation to accept the suggestion that he speak with a public defender in the first place if he did not want to speak with one.

■ Nor do we believe that Pappas' right to private consultation with a lawyer was abrogated during this phone call with the public defender. *See Farrell v. Anchorage*, 682 P.2d 1128, 1130 (Alaska App. 1984). Judge Wolverton's findings of fact on the privacy issue are not clearly erroneous, and his conclusions are supported by substantial evidence.

Pappas' convictions are AFFIRMED.