**Martin YANCY, Appellant,**

v.

**STATE of Alaska, Appellee.**

Nos. A–1392, A–1413.

Court of Appeals of Alaska.

March 6, 1987.

---

Carol S. Brenckle, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nathan A. Callahan, Asst. Dist. Atty., Thomas M. Wardell, Dist. Atty., Kenai, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

## OPINION

Before COATS and SINGLETON, JJ., and WHITE, District Court Judge.*

WHITE, District Court Judge.

Martin Yancy appeals his convictions for driving while intoxicated (DWI), AS 28.35.-030, refusal to submit to a chemical test, AS 28.30.032, and driving while license suspended, AS 28.15.291.

## FACTS

In the early morning hours of October 5, 1985, Kenai Police Officer Rouse stopped a Ford pickup truck driven by David Emery, on suspicion of DWI. Martin Yancy was a passenger in the pickup truck. Officer Rouse placed Emery in the back of his patrol vehicle, and eventually arrested him for DWI. Based on his contact with Yancy, Rouse also concluded that Yancy was intoxicated. Rouse later testified that Yancy's speech was somewhat slurred, his eyes were bloodshot, and that there was the odor of alcohol about him. There was a wheelchair in the pickup, and Rouse observed that Yancy was a paraplegic.

Yancy was being belligerent; he was yelling and calling Rouse, and other officers, names. Rouse testified that while he was talking with Emery in the patrol car, Emery told Rouse to just ignore Yancy, that "normally he's a pretty nice guy but he's messed up now." Emery apparently

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

also stated that Yancy could not drive. When Rouse returned to the pickup, Yancy had moved over to the driver's side and was hanging out of the driver's window, continuing to be belligerent. Officer Rouse arranged for a third person to come and get Yancy and the truck. He told Yancy that the other person was coming to pick him up. Yancy continued to shout.

Officer Anastay arrived to assist Rouse. Rouse told Anastay that Yancy was intoxicated, that Yancy couldn't drive, and that someone was coming to pick him up. Officer Anastay also observed Yancy leaning out the window yelling obscenities, as did the third officer present, Officer Backstrom. Two or three minutes after Anastay arrived, Rouse and Backstrom left to take Emery to Wildwood pre-trial detention facility. The keys were in the ignition, and Yancy was still seated in the pickup.

Shortly after Emery was taken away, the pickup started forward with a jerking motion. It moved into the lane of traffic, crossed over the center line, then came back to the shoulder, and continued down the road. It took Officer Anastay over two-and-one-half miles to effect a stop of the pickup. It continued weaving back and forth during that time. After being stopped, Yancy refused to submit to a preliminary breath test (PBT), and insisted that he had a constitutional right to drive. Based upon what Rouse had told him, the erratic driving he observed, and the length of time it took to effect the stop, Officer Anastay decided to arrest Yancy.

Officer Backstrom heard Anastay, over the radio, say that he was in pursuit of the pickup and turned back to assist. Backstrom eventually transported Yancy to the station. According to Backstrom, Yancy asked for an attorney, and was given repeated opportunities to call one. Backstrom eventually recorded Yancy's refusal to submit to the Intoximeter.

## WAS THERE PROBABLE CAUSE TO ARREST YANCY FOR DWI?

██ Yancy moved to suppress the fruits of the arrest, on the ground that Anastay lacked probable cause. Yancy argues that because Officer Anastay had no personal contact with him, and therefore had no basis for believing he was intoxicated, Anastay lacked probable cause to arrest him for DWI. Anastay's police report indicated only that Yancy's vehicle had swerved between the center line and the shoulder. Thus, Yancy contends that his refusal to take a PBT could not be relied upon as a determining factor. See AS 28.-35.031(b)(2). However, at the probable cause hearing, Anastay testified that he had seen the vehicle cross over the center line several times.

Yancy also contends that, because there was no reasonable basis shown for Rouse's information, Anastay was not entitled to rely on Rouse's statement that Yancy appeared intoxicated. Mattern v. State, 500 P.2d 228, 232–33 (Alaska 1972). Yancy's witness, Emery, testified that Rouse was no closer than four feet from Yancy.

Anastay testified that he had relied on Officer Rouse's statement that Yancy was a paraplegic and that he appeared intoxicated. Anastay stated that he had worked with Rouse for eight years and found him to be reliable. Anastay also indicated that he relied on his own observations. First, he observed that Yancy was hanging out the window of the vehicle yelling obscenities, an observation not inconsistent with intoxication. Second, Yancy was alone in the vehicle when it moved away.

We find that there was a reasonable basis demonstrated for Rouse's determination that Yancy was intoxicated. Furthermore, based on Anastay's own observations, that Yancy was somehow managing to drive the vehicle, and that his behavior was uncooperative and belligerent, Anastay had probable cause to make the arrest. Cruse v. State, 584 P.2d 1141, 1144 (Alaska 1978).

## WAS YANCY GIVEN A REASONABLE OPPORTUNITY TO CONSULT WITH AN ATTORNEY PRIOR TO REFUSING TO TAKE THE INTOXIMETER TEST?

██ Yancy also moved for dismissal of the charge alleging refusal to submit to a

chemical breath test. He argues that he was not afforded an opportunity to contact an attorney before deciding whether to take the Intoximeter. *Copelin v. State,* 659 P.2d 1206 (Alaska 1983). The police made a videotape of Yancy's refusal. It was played at the evidentiary hearing. The tape indicates that Yancy made the following statements: "I want an attorney;" "I want a public defender;" "I want an attorney here, now;" "I'm demanding a lawyer;" "I want a public defender here;" "Give me somebody who knows what you're talking about;" and, "I want public assistance." The officer attempting to explain to Yancy his rights and obligations, reminded Yancy that he had already been given an opportunity to call an attorney. Yancy replied, "Yeah, you gave me the numbers, too." Officer Backstrom apparently then told Yancy that he could call any attorney he wanted, and gave Yancy the yellow pages. Yancy replied, "I can't afford one." Backstrom then stated, "You call one and tell him that. The court will appoint one tomorrow."

Yancy was told that he did not have the right to have an attorney present while taking the Intoximeter test. Yancy stated, "I cannot afford an attorney. I want to see a lawyer right now before I take ... a test. Show me legal counsel, I'll do anything you want. I'll do anything on the advice of an attorney."

On cross-examination, Officer Backstrom stated that he gave Yancy the name and home telephone number of Attorney Allan Beiswenger. Before the videotape was made, Yancy called Beiswenger's number, but there was no answer. Backstrom testified that "At that time I didn't know [if Beiswenger was a public defender]. That was one of the names that.... We were told by Mr. Beiswenger that we could give

defendants or prisoners his name." Backstrom did not know the names or home phone numbers of any public defenders, and he did not attempt to find this information.[1] He had never personally called the public defender's office on behalf of an arrestee, nor had he ever seen a list of public defenders posted at the station. Backstrom stated, "I just gave him the name of an attorney that we were told to give ... and the Yellow Pages," which contains a list of attorneys.[2]

Magistrate McBride rejected Yancy's argument that the police have a specific obligation to contact the Public Defender Agency in such circumstances. The court ruled that Yancy had been afforded a reasonable opportunity to contact an attorney. She noted, *inter alia,* that any attorney's advice would have been sufficient to accomplish the purposes discussed in *Copelin.*

In *Anderson v. State,* 713 P.2d 1220, 1221 (Alaska App.1986), we noted that the holding in *Copelin v. State,* 659 P.2d 1206, 1215 (Alaska 1983), imposed a duty on the state not to unreasonably interfere with a DWI arrestee's attempts to obtain consultation with counsel. However, *Copelin* did not require that the police inform an arrestee of a right to contact counsel. *Anderson,* 713 P.2d at 1221. Therefore, we concluded that the police had no duty to inform Anderson of the availability of the Public Defender Agency or provide a number at which the Public Defender Agency may be reached. *Id.* Although Anderson had repeatedly asked to speak with an attorney prior to taking a breathalyzer, she did not claim that she was unable to afford an attorney nor did she ask to speak to a public defender. Furthermore, Anderson was given access to a phone, was provided with a phone book, and was seated in a room in which a sign was posted providing

1. It appears that Officer Backstrom may have believed that Beiswenger was a public defender. When asked if he knew the home phone numbers of any public defenders, Backstrom stated, "The only one that I'm familiar with is Mr. Beiswenger." In fact, Beiswenger is in private practice.

2. In fact, the Kenai telephone directory does not have a listing in its yellow pages for the Public Defender Agency. The Public Defender Agency did not have a twenty-four hour answering service in Kenai although such a service may have been available in Anchorage. *See Pappas v. Anchorage,* 698 P.2d 1236, 1237 (Alaska App. 1985).

the Anchorage public defender's twenty-four hour phone number.

In contrast, Yancy specifically requested a public defender. He adamantly insisted that he could not afford an attorney, and in fact was later found to be eligible for public-defender services.

In *Anderson,* we did not consider the interplay between AS 12.25.150 (requiring that an arrestee, immediately after an arrest, be provided the opportunity to telephone or consult an attorney and any relative or friend) and the public defender notification statute, AS 18.85.110. Alaska Statute 18.85.110 states in part:

(a) If a person having a right to representation under AS 18.85.100 is not represented by an attorney, the law enforcement officers concerned, upon commencement of detention, or the agency, or the court, as the case may be, shall

(1) clearly inform him of the right of an indigent person to be represented by an attorney at public expense; and

(2) if the person detained or charged does not have an attorney, notify the agency or the court, as appropriate, that he is not so represented.

In this case, the officer acted reasonably in providing the number of an attorney whom he thought to be a public defender. Had Yancy been provided the telephone number of the Kenai Public Defender Office, there would have been no answer.[3] The police could have done no more to honor the provisions of AS 18.85.110. Considering the efforts of the police in assisting Yancy to contact a lawyer, coupled with the unavailability of a public defender at night in Kenai, we affirm Magistrate McBride's ruling. The police fully complied with the requirements of *Copelin v. State,* 659 P.2d 1206 (Alaska 1983).[4]

## DID THE COURT COMMIT PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE BURDEN OF PROOF FOR THE AFFIRMATIVE DEFENSE OF NECESSITY?

 At the close of trial, Yancy argued successfully to the court that some evidence of the affirmative defense of necessity had been demonstrated and, therefore, that the defense should be submitted to the jury. The jury was instructed that:

Conduct which would otherwise be a criminal offense may be justified by reason of necessity. In order for the defense of necessity to apply, the defendant's act must have been done to prevent a significant harm, there must have been no adequate alternative available to defendant, and the harm caused by the act must not have been disproportionate to the harm avoided.

At the time of his act, the defendant must have reasonably believed that an emergency existed and that he had no adequate alternative available. While the defendant's belief must have been reasonable, his conduct is justified even if his belief was mistaken. The defendant must have acted with the intention of avoiding a greater harm.

If there was another available alternative, which would have caused less harm than was caused by violating the law, he is not justified in violating the law.

Even if the harm actually caused by the defendant's act is greater than the harm the defendant sought to avoid, the act must be justified so long as the harm the defendant sought to avoid was great-

---

3. At oral argument, Yancy was represented by a representative from the Public Defender Office who informed the court that, in fact, no public defender would have been available to receive a call from Yancy had one been made. Individual public defenders are not identified as such in the Kenai phone book and no special arrangements have been made to receive calls after business hours.

4. We take this opportunity to suggest that the supreme court exercise its supervisory and rule making powers to study a rule modification which would provide a mechanism for ensuring the availability of attorneys at night for indigent people in custody. *State v. Fitzsimmons,* 93 Wash.2d 436, 610 P.2d 893, *vacated,* 449 U.S. 977, 101 S.Ct. 390, 66 L.Ed.2d 240, *aff'd on remand,* 94 Wash.2d 858, 620 P.2d 999 (1980) (demonstrates how the State of Washington has initiated such a system).

er than the harm which was, at the time the defendant acted, reasonably foreseeable to result from his act.

This instruction applies only to the charges of driving while intoxicated and driving while license suspended or revoked but does not apply to the charge of refusal of chemical [testing].

No prefatory instruction was given outlining the defendant's burden of proof. *See* AS 11.81.900(b)(1)(B) (the defendant must establish necessity by a preponderance of the evidence). In reviewing the jury instructions, the parties noted the omission of such an instruction on affirmative defenses. However, the court decided not to provide such an instruction, and no objection was made by Yancy. The court relied upon language in the Alaska Pattern Jury Instructions which stated that, "[n]o instruction generally defining 'affirmative defense' recommended. Rather, specific instruction concerning [certain] individual affirmative defenses ... have been prepared. Additionally, any attempt to define 'affirmative defense' would probably confuse the jury and yield no positive results." Alaska Pattern Jury Instructions (Criminal) 81.-900(b)(1).

On appeal, Yancy argues that the failure to give an instruction on the burden of proof was plain error. In response, the state contends that it was not plain error because, as evinced by the pattern jury instructions, reasonable judges could differ over the need for such an instruction and the likelihood of confusing the jury. *See Bidwell v. State*, 656 P.2d 592, 594 (Alaska App.1983).

The state further argues that even if the failure to give the instruction was error, Yancy suffered no prejudice since the burden of proof had been incorrectly argued by the state. The state had argued that it was required to prove beyond a reasonable doubt that there was no valid necessity defense.

Given the language in the pattern instruction, and the state's undisputed assertion that in closing it argued that the state must prove beyond a reasonable doubt that there was no valid necessity defense, no plain error was created by the court's failure to give an instruction requiring the defendant to prove necessity by a preponderance of the evidence.[5]

The convictions are AFFIRMED.

BRYNER, C.J., not participating.

---

5. The state asserts, in the alternative, that the court erred in finding some evidence of necessity, therefore no plain error was created by the omission of an affirmative defense instruction.

*See Cleveland v. Anchorage*, 631 P.2d 1073 (Alaska 1981); *Paul v. State*, 655 P.2d 772 (Alaska App.1982). We need not address this issue.