Edwin SALTZ, Appellant,

v.

STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, DRIVER IMPROVEMENT BUREAU, Appellee.

No. S–7357.

Supreme Court of Alaska.

Aug. 1, 1997.

Peter F. Mysing, Kenai, for Appellant.

Cameron M. Leonard, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

Edwin Saltz appeals from the revocation of his driver's license under AS 28.15.165 for driving while intoxicated. He argues that a state trooper's failure to read the "attorneys" section of the Yellow Pages to him when he did not have his reading glasses violated his right to a reasonable opportunity to consult with counsel before deciding whether to submit to a breathalyzer test. The superior court rejected his argument and upheld the revocation of his license. We affirm.

## II. *FACTS AND PROCEEDINGS*

On October 14, 1994, Edwin Saltz drove his truck into a ditch. Alaska State Trooper Greg Lavin arrived at the scene, interviewed two witnesses, and spoke with Saltz. According to Trooper Lavin's testimony, Saltz's breath smelled strongly of alcohol, his eyes were bloodshot and watery, and he had trouble balancing. Trooper Lavin also testified that Saltz's speech was slurred and at times incoherent. Saltz admitted to Trooper Lavin that he had consumed three drinks within the last two hours and agreed to perform field sobriety tests. Saltz failed those tests, and Trooper Lavin arrested him for driving while intoxicated. Trooper Lavin transported Saltz to the Wildwood Pretrial Facility to administer a chemical test of his breath to determine his blood alcohol level. Saltz's glasses remained in his pickup at the scene of the accident.

After they arrived at the station, Trooper Lavin advised Saltz of his *Miranda* rights,

including his right to counsel. Saltz asked to speak to an attorney. Trooper Lavin provided Saltz with a telephone and a copy of the Yellow Pages opened to the "attorneys" section. Saltz told Trooper Lavin that he could not read the listings without his glasses. Trooper Lavin responded that he was not permitted to do more than offer Saltz the Yellow Pages, a telephone, and the opportunity to speak with an attorney in private. Saltz asked if he could borrow glasses or if Trooper Lavin could wait to conduct the breath test until Saltz's pickup arrived with his glasses. Trooper Lavin replied that he had no glasses and that Saltz could use his own glasses if they came in time, but that he would not delay the breath test. After this exchange, Saltz sat beside the phone but did not attempt to use it.

Following the mandatory fifteen-minute waiting period, Trooper Lavin administered the breath test without objection from Saltz. The test produced a reading of 0.16%. Saltz elected to have an independent blood test at his own expense at a nearby hospital. That test produced a reading of 0.175%. Based on the result of the breathalyzer test, the Division of Motor Vehicles revoked Saltz's driving license under AS 28.15.165.[1] Because Saltz had prior convictions for driving while intoxicated in 1986 and 1988, the revocation was effective for three years. Saltz requested administrative review of the revocation.

An evidentiary hearing took place in December 1994 before Department of Public Safety Hearing Officer Joy Gifford. The hearing officer heard the testimony of Trooper Lavin. With regard to the conversation concerning the attempt by Saltz to call an attorney, Trooper Lavin testified on cross-examination:

> In my training and experience and what I've been told by senior Troopers is, you are not allowed—I'm not allowed to offer—I can offer a phone book, I can offer privacy while the person's talking, I turn off my tape recorder. He can—I make—They can call anybody. I don't restrict my phone call privileges of my customer strictly to lawyers or attorneys, so I felt that if he couldn't read the Yellow Pages, that he would be perhaps resourceful enough to call his wife, a relative, call Information, the Public Defender's Office, make other arrangements.

Trooper Lavin also testified, in response to the contention on cross-examination that by simply reading the Yellow Pages he had not "recommended anybody," that

> in one sense I haven't recommended anybody; yet I didn't finish the attorney section. Okay, so now if it comes up that he disagreed with that attorney and found his reading glasses and found another attorney, I feel that it would come back to me as, well, you read these, yes, I chose this one, but you didn't read all of them, so rather than—avoid that conflict, I leave it up to their resources. It is a learning experience, perhaps, on my future D.W.I.s, I can say, if you have a problem reading, you can always call the Public Defender, that's an option, here's the 1–800 number; you can call your wife or friend also, but in a situation like that, it's been advised to me by senior Troopers and by people with experience that you don't steer them in any way (indiscernible) so no, I didn't offer any more than the Yellow Pages. I didn't offer to help him read, interpret or whatever.

After listening to the testimony and the tape of the conversation between Saltz and Trooper Lavin prior to the breath test, the hearing officer upheld the revocation of Saltz's license. On appeal to the superior court, Judge Charles K. Cranston affirmed the hearing officer's decision. Saltz appeals.

### III. DISCUSSION [2]

◼ Saltz argues that Trooper Lavin violated his right to a reasonable opportunity to

---

1. Under AS 28.15.165 and AS 28.35.030, the department must revoke a person's license if the test produces a reading of .10% or greater.

2. AS 28.15.166(m), setting forth the standard applicable to the superior court's review of a driver's license revocation by the Department of Public Safety, provides:

> The judicial review shall be on the record, without taking additional testimony. The court may reverse the department's determination if the court finds that the department

consult with counsel before deciding whether to submit to a breathalyzer test and that this violation requires the exclusion of the result of that test under *Copelin v. State,* 659 P.2d 1206 (Alaska 1983), and *Whisenhunt v. State, Department of Public Safety,* 746 P.2d 1298 (Alaska 1987). Saltz contends that Trooper Lavin violated this right by failing to read the yellow pages to him when Trooper Lavin knew that Saltz could not do so because he did not have his glasses. He also argues that Trooper Lavin should have informed him of the option of calling the public defender, offered him the number of the public defender, or suggested that he call a relative or friend for assistance in locating counsel.

The Alaska Department of Public Safety (State) argues that the statutory right to consult an attorney prior to taking a breathalyzer test does not place an affirmative duty on police officers to assist an arrestee in trying to locate an attorney. The State maintains that Trooper Lavin complied with Saltz's rights when he provided Saltz with a "telephone and a phone book."

> In *Copelin,* we held that
> when a person is arrested for operating a motor vehicle in violation of state or local drunken driving ordinances, and requests to contact an attorney, AS 12.25.150(b)[3] and Alaska Criminal Rule 5(b) require that the arrestee be afforded a reasonable opportunity to do so before being required to decide whether or not to submit to a breathalyzer test.

*Copelin,* 659 P.2d at 1208. We further held that a failure by the police to allow an arrestee such an opportunity required the suppression of the "subsequent evidence, whether in the form of the test results or the

refusal to submit to [the test]." *Id.* at 1215. In *Whisenhunt,* we extended this rule and exclusionary remedy to civil license revocation proceedings such as the one at issue in this case. 746 P.2d at 1299.

■ The statutory right delineated in *Copelin* is "not an absolute one (which might involve a delay long enough to impair testing results), but, rather, a limited one of reasonable time and opportunity that can be reconciled with the implied consent statutes."[4] *Copelin,* 659 P.2d at 1211–12 (footnote omitted). As we explained,

> [r]easonableness will depend on the circumstances of each case, such as the amount of time between the stop and the transportation to the station, when the request is made, and how much time is needed to set up the test. If the attorney cannot be contacted within a reasonable time the suspect must decide without the advice of counsel, whether to take the breathalyzer test.

*Id.* at 1212. We specifically stated that the right did not require any delay other than the fifteen-minute observation period already required prior to administration of the test. *Id.* at 1211. Thus, the statutory right to counsel under *Copelin* is more restricted than the constitutional right to counsel established by the U.S. Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Graham v. State,* 633 P.2d 211, 215 (Alaska 1981) (holding that an officer administering a breath test has a duty to "inquire into the nature of the refusal [to take a breath test] and, if it appears that the refusal is based on a confusion about a person's rights, the officer must

---

misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record.
Since we conduct an independent review of the administrative decision, we apply the same standard. *Miller v. Department of Pub. Safety,* 761 P.2d 117, 118 n. 2 (Alaska 1988).

**3.** AS 12.25.150(b) provides:
Immediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with the prisoner's attorney and any relative or friend, and any attorney at law entitled to practice in the courts of Alaska

shall, at the request of the prisoner or any relative or friends of the prisoner, have the right to immediately visit the person arrested.

**4.** The implied consent statute provides: "A person who operates or drives a motor vehicle in this state ... shall be considered to have given consent to a chemical test or tests of the person's breath for the purpose of determining the alcoholic content of the person's blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle...." AS 28.35.031(a).

clearly advise that person that the rights contained in the *Miranda* warning do not apply to the breathalyzer examination").

 In applying the statutory right, the court of appeals has interpreted *Copelin* as imposing on police only a limited duty to assist detainees in locating an attorney before taking a breathalyzer test. For example, in *Anderson v. State*, 713 P.2d 1220 (Alaska App.1986), the court held that the police "have no duty to inform [arrestees] of the availability of the public defender agency or a number at which a public defender may be reached." *Id.* at 1221. Similarly, in *Yancy v. State*, 733 P.2d 1058 (Alaska App.1987), the court ruled that the police complied with *Copelin* when an officer, upon a defendant's request for the telephone number of the public defender, provided the number of a private attorney who did not answer the defendant's telephone call.[5] *Id.* at 1060–62. Finally, in *Rollefson v. Municipality of Anchorage*, 782 P.2d 305 (Alaska App.1989), the court of appeals held that the right was not violated when an officer, after offering the phone book to a handcuffed defendant, did not also offer to hold the phone book or turn the pages. *Id.* at 306–07.

In light of this precedent, we conclude that Trooper Lavin had no duty to provide more assistance to Saltz under the circumstances. As the State points out, Saltz "could have called a friend or relative and asked them either for an attorney's number, or to call an attorney on his behalf." *See Zsupnik v. State*, 789 P.2d 357, 360 (Alaska 1990) (holding that detainee entitled to call friend or relative as well as counsel). Saltz could also have requested the number of the public defender, pointed randomly at a number and asked Trooper Lavin to read it to him, or even attempted to read the advertisements himself, some of which feature telephone numbers more than one-half inch tall. However, Saltz did nothing beyond stating that he could not read without his glasses, asking if Trooper Lavin could wait until his glasses arrived, and requesting to borrow glasses. Indeed, the tape recording of the conversation between Saltz and Trooper Lavin prior to the breath test reveals that Saltz never even directly asked Trooper Lavin to read him the Yellow Pages. Thus, Trooper Lavin's reluctance to help Saltz, while perhaps overly cautious, was far from the "flat refusal to afford access to counsel after it is requested" that the exclusionary rule of *Copelin* was designed to discourage. *See Copelin*, 659 P.2d at 1211 n. 12. Therefore, we hold that Trooper Lavin did not violate Saltz's statutory right to speak with an attorney prior to deciding whether to submit to the breath test, and the results of that test were admissible in Saltz's license revocation proceeding.

## IV. CONCLUSION

Accordingly, the decision of the superior court is AFFIRMED.

---

5. *Yancy* also involved AS 18.85.110, which requires police to inform an indigent person charged with a serious crime of their right to be represented by an attorney at public expense and to notify the agency or the court that the indigent is not represented. *Yancy*, 733 P.2d at 1062. Saltz does not rely on this statute for any part of his argument.