**Wayne D. HUNTINGTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9227.**

Court of Appeals of Alaska.

Jan. 19, 2007.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kelly J. Lawson, Assistant District Attorney, and Jeffrey A. O'Bryant, District Attorney, Fairbanks, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Wayne D. Huntington appeals his conviction for misdemeanor driving under the influence.

■ The first of Huntington's claims involves his statutory right to contact an attorney. Under AS 12.25.150(b), as interpreted in *Wardlow v. State*,[1] all arrestees have the right to contact an attorney, relative, or friend immediately upon their arrival at the police station or other place of detention. Moreover, in *Copelin v. State*, 659 P.2d 1206 (Alaska 1983), the supreme court interpreted this statutory right in the context of DUI arrests: the court held that if an arrested motorist asks to contact an attorney, the motorist has a right to delay the mandatory breath test for a reasonable length of time to allow the motorist to consult the attorney about whether to take the breath test.[2]

Huntington argues that the police violated his statutory right to contact an attorney, and that the result of his breath test should therefore be suppressed.

■ Huntington was arrested at his house in Galena. At the time of his arrest, Huntington asked to call his attorney. The police told Huntington that he could make this tele-

phone call after they got to the police station. At the police station, the police informed Huntington of his *Miranda* rights (including his right to speak to an attorney before questioning), but the police did not expressly remind Huntington that he had previously asked to call his attorney, and they did not expressly invite him to make that telephone call. Huntington argues that the police, by failing to remind Huntington of his earlier request, and by failing to expressly offer Huntington the opportunity to make the telephone call, infringed Huntington's statutory right to contact an attorney.

■ Huntington's argument runs counter to our prior decisions on this issue. We have repeatedly held that AS 12.25.150(b) does not obligate the police to expressly offer a telephone call to an arrestee. Rather, the statute only obliges the police not to unreasonably interfere with an arrestee's efforts to call an attorney, relative, or friend.[3]

Here, Huntington does not assert that he made any attempt to contact his attorney after he arrived at the police station, or that he reminded the police of his desire to make this call. The record shows that Huntington remained silent on this matter even after he was read the *Miranda* warnings, which expressly apprised Huntington that he had a right to have an attorney present. Nor has Huntington challenged the truthfulness of Officer Danny Michels's testimony that he would have let Huntington make a telephone call if Huntington had asked to do so.

In other words, even though the police informed Huntington (correctly) that he would have to wait until they got to the police station to call his attorney, the police never impeded Huntington's ability to invoke and exercise that right once they got to the station.[4]

Huntington contends that he never again mentioned his desire to contact his attorney because he was waiting for the police to raise

1. 2 P.3d 1238, 1250 (Alaska App.2000).

2. *Copelin*, 659 P.2d at 1208.

3. *Rollefson v. Anchorage*, 782 P.2d 305, 306–07 (Alaska App.1989); *Yancy v. State*, 733 P.2d 1058, 1060–62 (Alaska App.1987); *Anderson v. State*, 713 P.2d 1220, 1221 (Alaska App.1986).

4. *See Wardlow*, 2 P.3d at 1250.

the issue—waiting for the police to tell him that the time had arrived for him to call his attorney. But there is no evidence that the police officers told Huntington that he would have to wait until they expressly authorized him to make the telephone call. Rather, the police simply told Huntington that he would have to wait until he arrived at the police station.

Even if we assume that Huntington subjectively believed that the police had placed some greater limitation on his ability to contact his attorney, this belief was not the result of anything that the police told him. We therefore agree with Magistrate Jerry Anderson that, under the circumstances presented here, "the police had no affirmative duty to remind [Huntington] about his earlier request to speak to an attorney".

In two earlier unpublished decisions—*Colette v. State*[5] and *Schroeder v. State*[6]—we held that, under similar circumstances (*i.e.*, when an arrestee requested to call an attorney or friend in the field, but did not renew that request at the police station), the police did not violate AS 12.25.150(b) by failing to expressly remind the arrestee of their earlier request to make a telephone call. Now that this issue has arisen again, we believe that we should issue a published opinion on this point of law.

■ Huntington next argues that his trial judge, District Court Judge Winston S. Burbank, should have granted a mistrial after a witness—the fuel truck driver who gave Huntington a ride home after Huntington's car went into a ditch—testified that Huntington (who is Native) was "mad" and "pretty loud" during the drive, and that he was "upset with the white people". From the ensuing discussion of the truck driver's testimony, it appears that the prosecutor did not know that the truck driver would give this last answer.

Although Huntington does not question the prosecutor's good faith, he points out that all of the jurors at his trial were non-Natives. (Apparently, five of the jurors were white, and one was Filipino.) Huntington argues that the evidence about this remark could be expected to engender so much prejudice against him in the minds of the jurors that Judge Burbank should have stopped the trial.

When Huntington made this request to Judge Burbank, the judge concluded that the challenged testimony had been relevant to the issue of Huntington's intoxication (because it was part of the truck driver's description of Huntington's demeanor and conduct). The judge further concluded that the prejudicial impact of this testimony would not be as great as the defense attorney argued. Judge Burbank explained:

> *The Court:* Mr. Huntington is well known in Galena. I assume that ... his views on [this] subject [are] widely known by most of the people [living here]. [And] most of the people on this jury, with the exception of one juror, I believe, [were already acquainted with] Mr. Huntington.

The judge therefore denied Huntington's motion for a mistrial.

■ On appeal, Huntington renews his claim that a mistrial was required. We are to uphold a trial judge's decision to deny a motion for mistrial unless that decision is clearly erroneous.[7] As this court explained in *Roth v. State:*

> The trial judge has the opportunity to observe the tainted evidence in the context in which it is received by the jury. [That judge], far better than we, can tell whether substantial prejudice has been done.

626 P.2d 583, 585 (Alaska App.1981).

Huntington relies on cases from Florida and Texas in support of his claim that racial slurs and ethnic epithets can be so prejudicial that their improper introduction warrants a mistrial.[8] But those cases involved

5. Alaska App. Memorandum Opinion No. 4811 (January 7, 2004); 2004 WL 32924.

6. Alaska App. Memorandum Opinion No. 4393 (May 9, 2001); 2001 WL 488038.

7. *Roth v. State,* 626 P.2d 583, 585 (Alaska App. 1981).

8. *Bryant v. State,* 25 S.W.3d 924, 925–26 (Tex. App.2000); *MCI Express, Inc. v. Ford Motor Company,* 832 So.2d 795, 800–02 (Fla.App.2002); *Simmons v. Baptist Hospital of Miami, Inc.,* 454

statements that were far more prejudicial than the statements at issue here.

In particular, the Florida and Texas cases dealt with inflammatory racial comments that were elicited for the very purpose of appealing to racial prejudice or for the purpose of undercutting the credibility of a key witness. Huntington's case, on the other hand, presents a situation where the challenged evidence, although possessing racial overtones, was relevant to the issues being litigated. The fact that Huntington was loud, upset, and perhaps belligerent was probative of whether he was under the influence. Moreover, the prosecutor did not deliberately elicit the challenged testimony, nor did the prosecutor either expressly or implicitly ask the jurors to draw any improper inference from this testimony. In fact, the prosecutor made no further reference to this challenged testimony, either during the examination of later witnesses or in final argument.

Judge Burbank could also properly consider the fact that the other evidence against Huntington was strong, and thus the challenged statement would likely have no effect on the jury's verdict. One of the State's witnesses saw Huntington trying to get his car out of the ditch. And the truck driver who gave Huntington a ride home testified that Huntington smelled of alcoholic beverages, and that Huntington fell as he was getting out of the truck. The Galena police chief testified that, when he examined Huntington's vehicle in the ditch, it smelled of alcoholic beverages. And when the police chief contacted Huntington at his home, he observed that Huntington's speech was slurred, that Huntington had an odor of alcoholic beverages, and that he staggered when he walked. Finally, Huntington's breath test showed that he had a blood alcohol level of .261 percent—more than three times the legal limit.

Finally, we note that Huntington declined Judge Burbank's invitation to give the jury a curative instruction, and we further note that the jurors were affirmatively instructed that they should base their decision on "[a] fair consideration of the evidence", and that they should not be governed by "sentiment ... passion, [or] prejudice".

In prior unpublished decisions, we have addressed similar instances of brief racial references in the trial testimony, and we concluded that these references did not require a mistrial.[9] We likewise conclude here that Judge Burbank did not abuse his discretion when he declined to order a mistrial in Huntington's case.

Huntington argues one final point on appeal. As explained above, when Judge Burbank ruled on Huntington's motion for a mistrial, he adverted to the fact that Huntington was well known in the Galena community, and he surmised that, because most of the jurors were already acquainted with Huntington before trial, Huntington's views about white people would not come as a surprise to these jurors. Huntington now argues that Judge Burbank abused his discretion by basing his decision, in part, on the assumption that the jurors already knew Huntington's views. He contends that, by resting his decision on this assumption, the judge relied on facts not in evidence.

Huntington did not object to Judge Burbank's ruling on this ground, so he must now show plain error.

It is not clear what evidence rule, if any, governs a trial judge's findings of fact in this circumstance.

Alaska Evidence Rule 201 places limitations on a judge's authority to take notice of facts. But as the commentary to this rule explains, Rule 201 applies only to issues of fact that would otherwise be submitted to the jury.[10] The question of wheth-

So.2d 681, 682 (Fla.App.1984). *See also La Reina Pharmacy, Inc. v. López*, 453 So.2d 882, 883–84 (Fla.App.1984); *McBride v. State*, 338 So.2d 567, 568–69 (Fla.App.1976).

**9.** *See Bailey v. State*, Alaska App. Memorandum Opinion No. 4813 (January 14, 2004); 2004 WL 60842 (evidence introduced that the defendant, who was black, called his female accomplice a

"fucking white bitch"); *Benson v. State*, Alaska App. Memorandum Opinion No. 1365 (March 18, 1987); 1987 WL 1359283 (evidence introduced that the victim of a sexual assault stated that "two honkies" had raped her).

**10.** The pertinent portion of the Commentary states: "[Evidence] *Rule 201 restricts only the power of the court to declare on the record,*

**527**

er a particular occurrence requires a mistrial is not a question of fact to be decided by the jury; rather, it is a mixed question of fact and law addressed to the discretion of the trial judge.[11]

 Alaska Evidence Rule 104(a), on the other hand, gives a trial judge wide-ranging authority to determine questions of fact that underlie the judge's rulings on the qualification of a person to be a witness, the existence of a privilege, or the admission of evidence. Evidence Rule 104(a) declares that, in these matters, a judge is not bound by the rules of evidence except for the rules of privilege. But although Rule 104(a) may suggest an approach to this problem, it is not directly pertinent to the issue of whether the judge should declare a mistrial—or, in particular, what facts a judge may properly rely on when assessing the potential unfair prejudice of challenged evidence.

We conclude, in any event, that Huntington has not shown plain error. As we have explained, Judge Burbank had ample grounds to deny Huntington's motion for a mistrial. Moreover, it seems likely that Judge Burbank was simply drawing an inference from facts that were already part of the record: that Huntington was a resident of the small town of Galena, and that five out of the six jurors were already acquainted with Huntington.

On the face of it, Judge Burbank could reasonably infer that a passing reference to Huntington's anger at "white people" was unlikely to inflame these jurors or influence their verdict. Alternatively, another plausible reading of Judge Burbank's remarks is that he was not affirmatively relying on this inference, but rather that he was simply reassuring the defense attorney that the truck driver's challenged testimony would not be unduly prejudicial under the circumstances.

To the extent that Judge Burbank's remarks might plausibly be interpreted differ-

ently, as Huntington now suggests, it was Huntington's obligation to object to the judge's remarks at the time they were made, and to either ask the judge to clarify the meaning of his remarks, or to engage in voir dire examination of the jurors to gauge directly how the challenged testimony might be affecting them.

In sum, we find no plain error.

The judgement of the district court is AFFIRMED.

---

without resort to formal proof, that a particular fact exists, *i.e.*, that something is actually true, [when] the fact involved is one that would otherwise be decided by the trier of fact upon [evidence submitted] by the parties." Commentary

to Alaska Evidence Rule 201, subsection (a) "Scope of Rule", first paragraph.

**11.** *Roth v. State,* 626 P.2d 583, 585 (Alaska App. 1981).